FREDERIC G. CHISHOLM, *Appellant,* v. MARJORIE CHISHOLM, *Appellee.*

Opinion filed December 31, 1929.

Petition for rehearing denied January 11, 1930.

1198

*E. M. Schwarzenberg,* for Appellant;

*G. P. Garrett* and *Vans Agnew, Hart & Schwarz,* representing Appellee only at hearing on motion to vacate and set aside decree, and on appeal.

ANDREWS, Commissioner:

This case is here upon appeal from an order of the lower court denying a motion of the appellant to set aside a decree

of said court entered on December 6, 1926, granting a decree of divorce to the appellee, Marjorie Chisholm.

The motion to vacate and set aside said decree, filed December 19, 1927, is as follows:

"Now comes the defendant, Frederic G. Chisholm, in the above entitled cause and moves to vacate and set aside the final decree obtained *pro confesso* in said matter on the grounds of deceit, surprise and irregularity, and for reasons therefor states as follows:

1. That the defendant duly filed an answer to the bill of complaint as appears by the docket of your Honorable Court on May 1, 1926.

2. That your defendant employed William C. Rogers, Esquire, attorney-at-law, practicing in Boston, Massachusetts, to advise him in said matter and said William C. Rogers communicated that fact to Frederic E. Watts, attorney for complainant, and that the said Frederic E. Watts notified said defendant's attorney under date of May 31, 1926, "I do not know when the hearing will take place, but will notify you in plenty of time," and that defendant relied, and had a right to rely upon said promise of complainant's attorney, but that complainant's attorney never notified your defendant, or his attorney of any hearing, to the surprise of your defendant.

3. That the court had no jurisdiction in said matter in that neither the complainant or defendant had resided in Florida two years prior to the filing of said bill of complaint as appears by affidavit of the defendant hereto attached.

4. The defendant, or his attorney, never received any notice that amendment to said bill of complaint had been filed as appears by the docket on October 9,

1926, nor did he receive any copies of said amendment, as appear from affidavits of Frederic G. Chisholm, Daisy M. Chisholm and Wm. C. Rogers attached.

4.A. Because it appears from the record of your Honorable Court that the amendment to bill of complaint was filed after replication had been filed; and there was no motion to file same on which due notice was given to other party; and no proof by affidavit that same is not made for purpose of vexation or delay, or that matter of the proposed amendment is material, and could not with reasonable diligence, have been sooner introduced into the bill as required by Equity Rule 42 of this Court.

5. The first knowledge the defendant had, or his attorney had that any such amendment was filed or a decree *pro confesso* had been entered was through a letter dated October 10, 1927, sent by the attorney for the complainant to the attorney for the defendant, a copy of which is hereto annexed to the affidavit of William C. Rogers.

6. That your defendant intended to defend said action and had a good defense on the merits of same in that the allegations in said bill of complaint and amended bill were untrue as appears by the answers submitted herewith and that neither the complainant or her parents resided in Florida for a period of two years prior to the bringing of said bill of complaint.

7. Because said decree *pro confesso* was obtained by a trick and fraud as will appear by the testimony which your defendant will submit and is borne out by letter attached to the affidavit of William C. Rogers, defendant said that he has at all times used due diligence in defending said matter, that he intended to

defend the same; that the complainant and her attorney had full knowledge that he intended to defend the same; that fraud had been practiced upon the courts for the purpose of obtaining said decree and that the amendment was filed October 9, 1926, of which no notice was given to your defendant and that same was filed for the purpose of tricking your defendant, knowing that defendant was living two thousand miles away and would have no knowledge that same was filed; all of which facts as above set out can be substantiated by lawful evidence.

WHEREFORE your defendant prays that upon due notice to respondent or her attorney, the matters herein set forth may be heard by the Honorable Court and an order setting aside and vacating the decree filed herein be allowed and that the defendant be permitted to file the answer, copy of which is annexed hereto.

FREDERIC G. CHISHOLM.

WILLIAM C. ROGERS,

Solicitor for Defendant.

"Then personally appeared before me Frederic G. Chisholm to me personally known and made oath that the statements above subscribed by him are true.

WILLIAM C. ROGERS,

(N. P. Seal) Notary Public.

Commission expires Aug. 15/30."

Attached to the motion to vacate and set aside the decree, is the affidavit of appellant; affidavits of William C. Rogers and Guy W. Currier, attorneys of Boston, Massachusetts; also affidavit of Daisy M. Chisholm, mother of appellant. There are attached to the motion, certain letters passing between counsel for complainant, in the original divorce case and the defendant, Frederic G.

Chisholm, and his attorneys in Boston, and also the proposed answer to the amended bill of complaint of Marjorie Chisholm, which is as follows:

"Now comes the defendant, Frederic G. Chisholm, by Eugene M. Schwarzenberg, his attorney, reserving unto himself the benefit of all just exceptions to said bill of complaint, and amendment, thereto, and for answer thereto, or so much thereof as he is advised is material to be answered, hereby amending an answer heretofore filed says:

"1. He denies and says it is not true that complainant was a resident of Florida for a period of more than two (2) years prior to the bringing of the bill of complaint.

"2. The defendant admits that he was lawfully married to the complainant on the 29th day of April, 1925, and says that thereafter they lived together as husband and wife.

"3. Your defendant denies and says it is not true that he ever left the complainant.

"4. Your defendant denies and says it is not true that he did not contribute towards the support of the complainant or seek work, or compel the complainant to work and support them both, or that your defendant did not give your complainant any money, but says that he always did work to support your complainant.

"5. Unmarked paragraph four has been stricken from the bill of complaint, wherefore your defendant does not answer same.

"6. Your defendant denies and says the statement is not true as alleged by the complainant in the para-

graph to be substituted for said paragraph four, and says that he never threatened to leave the complainant, or go to another country, and gave your complainant no cause to worry for the reasons alleged in said paragraph.

"7. Defendant denies the allegations in unmarked paragraph five of said bill of complaint and says the same are untrue.

"8. Defendant admits that he is over the age of twenty-one (21) years and that his present address is No. 12 Lincoln Road, Brookline, Norfolk County, Massachusetts.

"Now, having fully answered the complainant's bill of complaint, defendant prays that same be dismissed, with reasonable costs by him in his behalf expended."

The said proposed answer was filed, and on March 20th, 1928, the court made an order, referring the matter to a special master, and upon the master's report being presented to the chancellor, an order was entered on June 20, 1928, denying the motion of the defendant to vacate and set aside the final decree of divorce entered in the original case. From said order, appeal was taken to this Court for review.

According to the transcript of the record here for review the decree of divorce was entered December 6, 1926; the motion to vacate and set aside the said decree was filed on December 19, 1927, which was beyond the time limit of thirty days for filing a petition for rehearing, also beyond the time limit of six months for entry of appeal from the decree granting the divorce.

In the case of Kroier v. Kroier, 95 Fla. 865, 116 So. R. 753, this Court held that:

"Delay in moving to have a judgment vacated, so long as the party had no notice of the judgment and no rights of innocent third parties have intervened, will not usually bar his right to the relief prayed for."

It appears from the testimony that the solicitor for complainant and the complainant were married soon after the decree of divorce was granted, but it could scarcely be said that he was an "innocent third party," as he of all persons knew all the circumstances.

In the above case, it was also held that ordinarily lapse of time will not affect the right to vacate a decree on the ground that the court never had the jurisdiction to enter it, but if a party actually knows that a judgment has been rendered against him and the judgment is not simply void but merely voidable it is the rule that he must exercise reasonable diligence in procuring its vacation; and unexcused laches or delay will generally preclude him from obtaining the relief sought. A judgment that is absolutely void can, as a general rule, be set aside and stricken from the record on motion, at any time. The exhibits attached to the motion to vacate the decree show conclusively that defendant had no notice of the amendment to the bill, the hearing nor entry of decree. The decree of divorce was void as will be pointed out in this opinion for at least two reasons, both jurisdictional.

It was held in the case of Sawyer v. Gustason, 96 Fla. 6, 118 So. R. 57:

"Where the jurisdiction of a court of equity has been wrongfully invoked and a final decree obtained upon false allegations of jurisdictional facts, the defendant, being free from laches, may obtain relief by way of motion to vacate such final decree and the decree *pro confesso* upon which it was based. Under and

by such motion, it must be shown that there was deceit, surprise, or irregularity in obtaining such decree; that the defendant has acted *bona fide* and with reasonable diligence, and has a meritorious defense.''

The above case also approved the language used by Justice WESTCOTT in the case of Stribling v. Hart, 20 Fla. 235:

"Without the existence of strong and unavoidable circumstances excusing such neglect and laches, the decree should not be opened. Such power should not be exercised upon a mere desire to let in a defense upon the merits. The facts established must show *deceit, surprise* or *irregularity* in obtaining the decree, that the defendant has acted *bona fide,* and with reasonable diligence, and has a meritorious defense; and the facts constituting such defense must distinctly and satisfactorily appear, and the proposed answer should be exhibited.''

If the record, as evidenced by the exhibits and testimony involved in the hearing on the motion to vacate and set aside the decree of divorce, shows unexcused laches or failure to exercise reasonable diligence on the part of the defendant, petitioner, the decree of the court denying the motion to vacate the decree of divorce should be affirmed, unless the proceedings were void—as for lack of jurisdiction.

The motion to vacate the alleges and documents attached in support thereof show that defendant was duly served with process in the divorce suit by publication and mailing same to his address at 12 Lincoln Road, Brookline, Massachusetts.

On April 5, 1926, W. C. Rogers, of Boston, wrote counsel for complainant, as follows:

"I have been retained by Mr. Frederick G. Chisolm to represent him in the divorce libel brought by you in behalf of Marjorie Chisholm. I have not yet selected local counsel, and before doing so I would like a copy of your bill. Would you kindly send me a copy of your bill, and I will send you a copy of my answer when I have sent it to the court."

On April 9, 1926, Mr. Rogers received a reply from counsel for complainant, as follows:

"I received your letter of the 5th, relative to the divorce 'libel' brought by me in behalf of Mrs. Chisholm. It is not the custom here to send copies of bills out of the State, so I made only one copy for my file. Since, however, you request it I shall have another copy made and send it to you in the next few days."

On the same day, a copy of the bill was sent with a letter reading as follows:

"I enclose herewith pursuant to your request, copy of the bill of complaint filed in the case of Marjorie Chisholm v. Frederick G. Chisholm."

On April 28, 1926, Mr. Rogers wrote counsel for complainant as follows:

"I am enclosing herewith a copy of the answer filed by the defendant himself in the case of Marjorie Chisholm v. Frederick G. Chisholm."

"I appreciate your courtesy in sending me a copy of the bill of complaint.

"The original answer has been forwarded to the court. As local counsel has not yet been engaged, Mr. Chisholm is filing this himself."

On the rule day in May, 1926, defendant duly filed his answer *pro se*. On June 1, 1926, complainant filed her replication. As shown by defendant's exhibit "O," W. C. Rogers, of Boston, with whom counsel for complainant had been corresponding with reference to this case, wrote counsel for complainant, on June 4, 1926, as follows:

"I beg to acknowledge your letter of May 31st with your replication enclosed for which I thank you.

"I suppose there will not be another sitting of your court in Florida until next fall. As there are several people from whom I would like to obtain depositions located here in the north, I would thank you to give me some idea of the earliest date that this case could be marked for hearing."

The letter of complainant's attorney, written from Melbourne, Florida, May 31st, 1926, enclosing a copy of the replication, to which the above letter was a reply, among other things, said:

"I do not know just when the hearing will take place, but I will notify you in plenty of time."

The record shows that after complainant filed her replication on June 1, 1926, her counsel on August 28th, following, filed a motion to amend the bill of complaint to strike out as a ground for divorce, "habitual intemperance" and insert in lieu thereof "extreme cruelty." The application for amendment was set by the chancellor before him for August 26, 1926; notice of which purports to have been served by mail by counsel for complainant in his affidavit, stating "mailed a copy of the above motion, notice and affidavit, to Frederick G. Chisholm on the 20th day of August, A. D. 1926, addressed to 12 Lincoln Road,

Brookline, Mass., with sufficient postage upon the envelop which was duly sealed, to carry the same to Brookline and that said envelop was deposited in the post office at Melbourne on said date.''—same being sworn to and subscribed before a notary.

The motion was set to be heard at Sanford, Florida, on August 26, and the notice of hearing is alleged to have been mailed on August 20, 1926, and according to the testimony of counsel for complainant, it was mailed on August 21st. Only five days intervened between August 21st and August 26th. Chancery rule 61 provides that after replication, the bill shall not be amended by adding new facts or defenses or altering the original statements, except by leave of the court upon motion and cause shown ''after due notice to the adverse party.'' Chancery rule 59 provides that where an amendment shall be made after the answer is filed, the defendant shall put in a new or supplemental answer on or before the next rule day, unless time is enlarged by the court, and upon his default, like proceedings may be had as in cases of omission to put in an answer.

The chancellor, on August 26, 1926, granted the motion to amend and ordered that if such amendment required a new or further answer that he be allowed until October, A. D. 1926, rule day to answer the same, and that a true copy of the amendment be served at least ten days before said October rule date. On November 1, 1926, solicitor for complainant filed praecipe for decree *pro confesso* as of the November rules, for failure of the defendant to. plead, answer or demur to the amended bill. The clerk on the November rules, entered a decree *pro confesso* and a special master to take the testimony was appointed by the chancellor on November 3, 1926. On December 2, the special master submitted his report and on December 3, the chan-

cellor granted a final decree of divorce, and the same was entered of record on December 6, 1926.

On October 4, 1927, Mr. Rogers, of Boston, wrote counsel for complainant as follows:

"It has been some time since I heard from you relative to the above-entitled case. In your letter of May 31st, 1926, you will notice you told me you did not know just when the hearing on this case would take place, but you would notify me in plenty of time. As I have not heard from you, I would like to know what the status of this case is at the present time."

On October 10, 1927, counsel for complainant replied:

"The case of Chisholm v. Chisholm is no longer at issue, the complainant having obtained a final decree *a vinculo matrimonii* during the month of December, 1926. The bill of complaint was amended and the allegation of habitual intemperance stricken therefrom and extreme cruelty added in its stead.

"A copy of the amendment and notice of the motion asking for an amendment was mailed to the defendant at No. 12 Lincoln Road, Brookline, Mass., on the 20th day of August, A. D. 1926. The defendant failed to answer the amended bill and decree *pro confesso* was subsequently entered and testimony taken *ex parte* and the final decree granted thereon.

"I took it for granted of course that as Mr. Chisholm had employed you to represent him in this matter he would communicate to you any information he received. There is no doubt whatever in my mind but what Mr. Chisholm received this notice and that he knew the complainant has received her decree of divorce. I am very sorry that you were placed in the

position of not knowing the status of the case and I assure you that it was with no intention of taking advantage of anyone concerned that I sent the notice directly to Mr. Chisholm instead of to you.''

About the same time, the defendant wrote the clerk of the court of Brevard county, as follows:

''Having had no notice of case in past year, I would like to know what disposition has been made of same.''

Upon the bottom of which appears the following notation:

''The above styled cause has been completed, final decree filed December 6th, 1926. N. T. Froscher, C. C. C. By J. S. Brooks, D. C.''

Mr. Chisholm on the motion to vacate testified that he never received the copy of the notice and motion to amend the bill of complaint, which counsel for complainant testified that he mailed on August 20, 1926, to 12 Lincoln Road, Brookline, Massachusetts; that his mother received the family mail, together with his, there at all times, and that she was at her home every day during the months of August, September and October of that year. The testimony shows that a copy of the motion to amend, and a copy of the notice and amendment was received by Guy W. Currier, an attorney of Boston, who had never taken any part in the divorce suit and apparently had no correspondence whatever with counsel for complainant except to return the enclosures.

From the evidence as shown in the record, a part of which has been stated above, it appears that the defendant knew nothing about the amendment to the bill of complaint, nor when the case was heard, nor when the testimony was

taken, nor when the divorce was granted, and learned it only afterwards, by making special inquiry of his own and that made by Mr. Rogers. Both Rogers and Currier testified in the hearing in Sanford on the motion to vacate the decree and their testimony corroborates Mr. Chisholm's.

There are at least two important issues in every divorce proceeding that are jurisdictional: (1) Section 4981, Comp. Gen. Laws of Fla. (1927), provides that "the complainant must have resided two years in the state of Florida, before filing of the bill."

(2) Section 4983 of said statutes provides that "no divorce shall be granted unless one of the following facts shall appear" (naming nine different grounds) the fourth being "extreme cruelty by defendant to complainant."

On November 20, 1928, a motion was granted appellant in this cause permitting the use of such part of the transcript filed on former appeal from the former decree of divorce, which was dismissed, as may properly apply to the present appeal.

The bill, filed on March 26, 1926, alleges that complainant

"is now and has been prior to the filing of this bill, a resident of the State of Florida, for a period of more than two years."

Two years' residence required for complainant suing for divorce means a legal residence that is a place of domicile or permanent abode. Legal residence under divorce statutes, requiring complainant to reside in the State two years, means the place which complainant has made the chief seat of his household affairs or home interests. Wade v. Wade, 93 Fla. 1004, 113 So. R. 374. Under the law of this State the husband is considered to be the one who establishes the domicile or residence.

The issue of "residence" in this State for a "period of two years" becomes very material in this case, in view of the fact that the answer of the defendant denies that the plaintiff has been prior to the filing of this bill of complaint, a resident of the State of Florida, for a period of two years. The terms "residence" and "residing," used in relation to divorce cases, means "legal residence." Herron v. Passailaigue, 92 Fla. 818, 110 So. R. 539.

The terms "residence" and "residing," used in relation to divorce cases, means "legal residence." Herron v. Passailaigue, 92 Fla. 818, 110 So. R. 539.

"Legal residence" under divorce statute requiring complainant to reside in the State two years means the place which he has made the chief seat of his household affairs or home interests. Wade v. Wade, *supra*.

The complainant could have used the same language as quoted above in alleging two years' residence, if she has been a resident of Florida for any two years "prior to the filing of the bill," though she may not have been a resident within ten years; however, the allegation, being practically in the language of the statute, may be sufficient as only ultimate facts are essential in pleadings of this kind.

In the divorce case of Troublefield v. Troublefield, 60 Fla. 387, 53 So. R. 518, this Court held that after a divorce had been decreed, defects in the allegations not demurred to, may be disregarded, "if all the essentials appear and the evidence fully sustains the allegations and the decree."

Does the evidence fully sustain the allegation as to citizenship?

In the *ex parte* hearing before the special master in this case, after stating her present "place of residence" as Eau Gallie, Florida, her counsel asked the following questions, and received answers as follows:

"Q. How long have you been residing in the State of Florida?

"A. About four years; I first came to Florida in 1922 with my parents.

"Q. You have resided in Florida since that time?

"A. I have.

"Q. You have, therefore, resided in the State of Florida for a period of two years prior to the filing of your bill of complaint?

"A. I have."

The above constitutes all the testimony in the case as to residence, though both of her parents testified at the same hearing.

This Court has held that the uncorroborated testimony of complainant is insufficient to support a decree of divorce. Dean v. Dean, 87 Fla. 242, 99 So. R. 816; Hickson v. Hickson, 54 Fla. 556, 45 So. R. 474; Fuller v. Fuller, 23 Fla. 236, 2 So. R. 426; 9 R. C. L. 425, Sec. 240.

In the case of Wade v. Wade, *supra*, this Court in substance said:

Except where the defendant has been guilty of adultery in this State, the prerequisite two years' residence in this State of the complainant in a suit for divorce, as prescribed by Sec. 3189, Rev. Gen. Stats. (1920) is *jurisdictional* and must be both alleged in the bill and established by the proofs; otherwise our courts have no authority to grant a decree of divorce. Beekman v. Beekman, 53 Fla. 858, 43 So. R. 923; Krumrine v. Krumrine, 90 Fla. 368, 106 So. R. 131. Such residence being jurisdictional, an admission thereof by the parties in their pleadings is ineffectual as a substitute for proof. The requisite residence must be alleged and established by proof. This is not an instance in which facts going to the jurisdiction, may be effectually ad-

mitted by the parties. Phelan v. Phelan, 12 Fla. 449;
Underwood v. Underwood, 12 Fla. 434; Gredler v.
Gredler, 36 Fla. 372, 18 So. R. 762; Prall v. Prall, 58
Fla. 496, 50 So. R. 867.

This Court has long adhered to the principle that:

"The State being a party in interest in all divorce
suits, and the public welfare and morals being in-
volved, admissions of the parties therein, even by way
of decree *pro confesso,* amount to but little. Proof of
the allegations of the bill must be made."

Hancock v. Hancock, 55 Fla. 680, 45 So. R. 1020; 15 L.
R. A. (N. S.) 670.

The rule has been established in this State that:

"Even if the defendant fails to appear the courts are
nevertheless bound to proceed with the same formality
as if such defendant was present and maintained the
keenest opposition."

Wade v. Wade, *supra;* State ex rel. Dixon v. Wolfe, 63
Fla. 290, 58 So. R. 841; Spencer v. Spencer, 61 Fla. 777,
55 So. R. 71

In the questions propounded by complainant's attorney
to her it will be observed that he asked leading questions
in a way to cover certain statutory phraseology and the
complainant merely assented thereto. This method of
adducing testimony in *ex parte* hearings in divorce cases
should be disapproved. The law requires the witness to
testify and counsel to ask questions without indicating the
answer desired from his own witness.

Where testimony is adduced in such method, the chan-
cellor should promptly return it to the master with direc-

tions to take the testimony in accordance with the rules which prohibit a solicitor from reciting the desired answer in his questions and requiring the witness to admit it by answering "I do" or "I have" or "Yes."

It is apparent that the complainant "admits" she had resided in Florida "since 1922," and admits she resided in the State for a period of two years prior to the filing of the bill. No evidence is given as to which two years prior to the filing of the bill was meant. In cases where the point has been directly raised this Court has approved averments of the bill and the evidence where it was alleged and proven that the complainant had resided in the State for two years "next before" filing of the bill. Krumrine v. Krumrine, 90 Fla. 368, 106 So. R. 131; Burns v. Burns, 13 Fla. 369.

In the Krumrine case, *supra,* this Court, speaking through Mr. Justice ELLIS, said the allegations of the bill and the evidence "show that the complainant has been residing in Florida for two years next before filing his bill of complaint."

In the Burns case, *supra,* Justice RANDALL, in discussing that point said:

> "The statement in the bill is, that 'the complainant is, and has been for more than two years, a resident of this State,' that the parties were married at Jacksonville in this State, according to law, in April, 1862, *'where the parties have ever since lived'.*"

The opinion then adds that the bill could not "by the use of any other form of words, have stated more positively than she has done, that she has resided in this State for the space of two years prior to the time of filing her bill."

It may not be essential to the granting of a divorce that the bill of complaint should do more than allege the "residence" of complainant substantially in the language of the statute, but the evidence to sustain it must show that complainant has "resided" *bona fide* in this State for two years *next preceding* the date of filing bill of complaint.

Before the special master appointed to take and report the testimony on the motion to vacate the decree of divorce, the defendant in the divorce suit testified that he first met complainant in April, 1924, and they were married in Cleveland, Ohio, April 29, 1925, and spent the next two weeks at a place near her parents' home at Eau Claire, Wisconsin, and then returned to Cleveland, where they lived until September, 1925. Then they went to Brookline, Massachusetts, for one month, and about October 1, 1925, came to Eau Gallie, Florida, and lived with the parents of complainant; that they lived in Cleveland four months and in Florida five and one-half months, before defendant returned to Massachusetts. Defendant further testified that it was not his intention to change his residence from Massachusetts; that his wife had never lived in Florida prior to October 1, 1925, except on one or two occasional visits during vacation; that from April, 1924, until April 29, 1925, she was in Massachusetts and Wisconsin during the whole of that period of time; that from his knowledge the father of complainant had lived at Eau Claire, Wisconsin, all his life; that her family only went to Eau Gallie, Florida, about September, 1925, and was residing there when this divorce suit was started on March 26, 1926.

This was in substance the evidence taken upon the motion to vacate, upon the issue as to residence of complainant in this State. The parents of complainant testified in the divorce suit, but for some reason they were not ques-

tioned as to their residence in the State of Florida. Neither parent was called to testify before the master in the hearing on the motion to vacate the decree of divorce, although the question of residence in the State of Florida was in issue, in view of the law that usually the residence of the father establishes the residence of his minor child.

It is shown that complainant had been living in Florida about six months when the bill was filed on March 26, 1926. It appears that complainant and defendant were about nineteen years old, and had been attending school in Massachusetts, when they were married. If complainant had resided continuously in Florida for two years previous to filing her bill, there would have to be at least eighteen months of it during her minority at the residence of her parents. There is no evidence that complainant's parents ever resided in Florida at any time previous to their coming to Eau Gallie about September, 1925, if then.

This Court has held that

"The domicile of the father is the domicile of his minor children, and such minors cannot during their minority acquire a domicile in Florida while their father's domicile is in another State. * * * A female minor, whose father is domiciled in another State, upon marrying a man whose domicile is in Florida becomes a resident of Florida from the date of such marriage.

"The mere intention to acquire a new domicile, unaccompanied by an actual removal, avails nothing, neither does the fact of removal without the intention" establish a domicile.

Beekman v. Beekman, 53 Fla. 858, 43 So. R. 923.

When complainant on October 9, 1925, filed her amendment, it struck out the original ground of "habitual in-

temperance" and inserted the charge of extreme suffering as follows:

"That the defendant, the said Frederick G. Chisholm, did upon several occasions threaten to leave your oratrix and go to another country, which threats were brought about through no fault of your oratrix and which caused her extreme suffering to the extent that her health was greatly impaired."

This Court has held that what shall be deemed sufficient cause for divorce is always a matter of law, and it is the duty of the court to refuse a divorce unless satisfied of the sufficiency of the bill and the truth of the evidence to establish one of the grounds. Hancock v. Hancock, 55 Fla. 680, 45 So. R. 1020.

Briefly, the alleged ground for divorce relied upon states her "extreme suffering" was caused by defendant in that he "upon several occasion threatened to leave your oratrix and go to another country."

In the case of Kellogg v. Kellogg, 93 Fla. 261, 111 So. R. 637, this Court said:

"Where a bill for divorce is fundamentally deficient in that it does not charge the essential elements of any ground for divorce recognized by our statutes, this Court will take note of such fundamental error as one going to the validity of the final decree, rendition of which is assigned as error, although there was no valid demurrer pointing out such defect in the bill; public policy requiring that no divorce be granted except upon grounds provided by law."

It was further held in the same case that "extreme cruelty" as a ground for divorce is such conduct as en-

dangers life or health, or causes reasonable apprehension of bodily hurt; mere inconvenience, unhappiness, or incompatibility of temperament or disposition, rendering marriage disagreeable or even burdensome, does not authorize a decree of divorce for extreme cruelty.

In addition to the general charge of "extreme cruelty" the complainant must specify leading facts, or at least some facts upon which the general charge is based.

"These facts must be so definitely alleged as to apprise the defendant of the nature of the facts to be proved, and to enable defendant to prepare his or her defense, as well as in order that the court may judge whether, the facts being proved, they will support a general charge."

Kellogg v. Kellogg, *supra;* Crawford v. Crawford, 17 Fla. 180; Seddon v. Seddon, 82 Fla. 48, 89 So. R. 348.

The allegations in the instant case limit the "facts relied upon as constituting extreme cruelty" to the mere allegation that the defendant

"did upon several occasions threaten to leave your oratrix and to go to another country."

This allegation, if proven, could by no means justify the granting of a decree of divorce, even if the answer filed in behalf of the defendant did not specifically deny this allegation of the bill.

Attention is directed to this Court's previous discussion of sufficient facts alleged as constituting grounds for extreme cruelty in the well considered case, Kellogg v. Kellogg, *supra,* where several former cases before this Court are discussed and reviewed.

In the case at bar no actual bodily violence is charged

nor shown in the evidence. In the case of Trigo v. Trigo, 90 Fla. 60, 105 So. R. 123, this Court said:

"The rule is well settled that divorce on the ground of extreme cruelty will be denied when there is no actual bodily violence, unless the treatment complained of be such as damages health or renders cohabitation intolerable and unsafe, or unless there are threats of mistreatment of such kind as to cause reasonable and abiding apprehension of bodily violence so as to render it impracticable to discharge marital duties."

Hayes v. Hayes, *supra;* 9 R. C. L. 341; Hickson v. Hickson, *supra.*

Complainant's mother testified that when she returned from Miami, the defendant had gone and "she told me he had written he was going to China."

No other person testified as to any threats of defendant "to go to another country," and this was what witness says that complainant told her, and was of course hearsay and not competent.

Even then, the sufficiency of the corroboration will be determined by the nature of the admission and the circumstances under which it was made. It is well settled that complainant's testimony is not required to be corroborated in every particular, but that it is enough if corroborated by the testimony of third persons as to the "cause" alleged. 19 C. J. 134.

In fact we could hardly imagine a more dangerous practice than that of granting a decree of divorce when the complainant's testimony is the only evidence tending to prove the truth of the "specific grounds alleged in the bill."

It is apparent that a threat of the defendant to leave complainant and go to another country, if established by ample proof, could not constitute the ground of extreme

cruelty in this case when it is shown by this record that complainant is trying to relieve herself and family of him for all time.

The record in this case develops that the real cause of this suit for divorce is non-support. In fact, it is alleged in the bill of complaint. If non-support were a ground for divorce in this State, it appears that the evidence in this record might support such a charge. It may be unfortunate and even deplorable that these two students of only nineteen years of age and of splendid families took upon themselves the duties and solemn relation of man and wife; and whether they were influenced by some modernist's view of "trial marriages" and upon reflection and trial found a serious mistake had been made, does not justify the use of the courts of this State as a medium to correct such a mistake in disregard of our laws which were established for the better protection of society.

We find that the evidence before us falls far short of proving a *bona fide* "residence" of complainant in this State for a period of two years prior to filing the bill, in fact, any two years; that the bill fails to allege any fact constituting extreme cruelty, and the evidence fails to show extreme cruelty or suffering; that the testimony, together with the exhibits in the hearing on the motion to vacate the decree of divorce, shows that defendant never received the notice and copy of the motion to amend bill of complaint through fault of complainant's counsel, and without any fault shown on the part of the defendant.

The English law concerning divorce and causes of divorce as it existed prior to the American Revolution was the ecclesiastical and not the common law. It was administered by judges and courts whose jurisdiction never existed in this country, and ecclesiastical law has never been recognized as a part of our common law. It is true that some of our

American statutes seem to have been copied from rules which obtain in the ecclesiastical courts of England and our courts, and thus similar rules of construction are applied to such statutes, and thus some of the settled principles and practices of those courts become guides for our courts, as in construing a statute making ''cruelty'' a ground of divorce without specific definition of that term.

In this State courts of chancery have jurisdiction by statute to grant divorces upon designated grounds and no other. The power of the Legislature over the subject of marriage as a civil status and its dissolution is unlimited and supreme in the absence of constitutional limitations, and the law governing the prerequisites for bringing suit and the grounds of divorce being statutory they should be followed. 9 R. C. L. 244 and 245.

The decree of the chancellor denying the motion of defendant to vacate and set aside the decree of divorce is reversed, and it is so ordered.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the decree of the court below denying the motion of defendant to vacate and set aside the decree of divorce should be, and the same is hereby, reversed.

TERRELL, C. J., AND WHITFIELD, ELLIS, BROWN AND BUFORD, J. J., concur.

STRUM, J., concurs specially.

STRUM, J. (concurring specially) :

The defendant below is guilty of culpable inattention to the progress of this cause, notwithstanding the assurance of complainant's counsel that defendant's Massachusetts

counsel would be notified "in plenty of time for the trial." After receiving that letter from complainant's counsel, defendant permitted a year and five months to elapse without making any inquiry whatever as to the progress of the cause, although he had heard nothing further from complainant's counsel. Such indifference is not consistent with due diligence, even under the circumstances. Even though this is a divorce suit, to which the State is a constructive party and which affects the good order of society, I think the defendant should not now be heard to question the sufficiency of the evidence adduced in support of the grounds for divorce alleged in the bill.

The jurisdictional infirmity because of complainant's lack of residence in Florida, however, is fatal to the decree, notwithstanding defendant's inattention to the suit. Because of the showing made in that behalf, I concur in the order of reversal. Wade v. Wade, 93 Fla. 1004, 113 So. R. 374.