MARY C. PILLARD v. LAWRENCE R. PILLARD.

173 So. 838.
Division A.
Opinion Filed April 16, 1937.

*M. G. Rowe,* for Appellant;
*William W. Judge,* for Appellee.

BUFORD, J.—From final decree awarding divorce to complainant the defendant appealed.

The bill of complaint alleged:

"Plaintiff further represents unto the Court that the defendant more than a year prior to date of filing of this bill of complaint, wholly regardless of her marriage covenants and duties towards plaintiff deserted the plaintiff, by driving him away. That said desertion of plaintiff by defendant was willful on her part, and has been obstinate and continuous for a period of more than one year immediately prior to the date of filing this bill of complaint."

The appellant here was not represented by counsel in the lower court, which accounts for it appearing that there was no attack on the bill of complaint. The allegation of the bill that respondent "deserted plaintiff, by driving him away" was insufficient. If the bill had alleged merely that respondent deserted plaintiff, it might have been contended that the allegation was in the language of the statute. But the allegation here is that the respondent deserted plaintiff in a certain manner, that is, by driving him away, and there is no allegation showing how, in what manner or to what extent the respondent drove complainant away.

It is well settled that in a suit for divorce the bill of complaint should contain allegation of all facts essential to the cause of action and to the plaintiff's right to maintain the suit. See Phall v. Phall, 58 Fla. 496, 50 Sou. 867, 26 L. R. A. (N. S.) 577; Chisholm v. Chisholm, 98 Fla. 1196, 125 Sou. 694; Kellogg v. Kellogg, 93 Fla. 261, 111 Sou 637.

It is not sufficient to allege in general terms the statutory cause for divorce. In addition to the general charge the complainant must specify leading facts, or at least some facts upon which the general charge is based. Those facts must be so definitely alleged as to apprise the defendant of

the nature of the facts to be proved and to enable the defendant to prepare his, or her, defense, as well as in order that the court may judge whether, the facts being proved, they will support the general charge. Crawford v. Crawford, 17 Fla. 180; Seddon v. Seddon, 82 Fla. 48, 89 Sou. 348; Kellogg v. Kellogg, *supra*.

The parties to this suit had been twice married to each other. They were married the first time in 1911. Then they each procured a divorce from the other at some time, the date not being clear from the evidence, but probably about 1921. The respondent in the court below, defendant here, testified that the defendant had gotten a divorce in Michigan. Then she said:

"Got his divorce in August, came back to me and lived with me from November 1st until March 1st of 1922 and then he married another woman. He left me, left me in Ann Arbor, married another woman and I immediately swore out a warrant that he had said I was his common law wife," which shows that after the divorce they lived together without the formality of a remarriage. They were remarried on July 15, 1929, in New Orleans. There is much testimony relative to what happened between them between the date of their first marriage and the date of their last marriage, which was irrelevant and immaterial.

We find no evidence in the record supporting the charge of willful, continued and obstinate desertion of the plaintiff on the part of the defendant. In fact, when the complainant was testifying as a witness in his own behalf and was being questioned by the defendant, who as stated above had no counsel to represent her, the following questions and answers occurred:

"I will ask Mr. Pillard what date this alleged desertion

occurred that he is basing his case on, the date of it, where-abouts it occurred?

"A. I refused to live with her when I left New Orleans I saw it was impossible.

"Q. And still in this here (transcript of record in for-mer case) you admit you lived with me in New Smyrna?

"A. No. I didn't.

"By Mrs. Pillard:

"I would like to offer in evidence cancelled check also sent to Mr. Pillard while he was in Louisville, from myself, and ask that it be filed as defendant's Exhibit No. 6.

"By the Special Master:

"There being no objection the same was filed in evidence and marked Defendant's exhibit No. 6.

"By Mrs. Pillard:

"I would like also to offer this letter I wrote to him and had returned to me, trying to get him to come back.

"By the Special Master:

"Letter postmarked December 27th, 1933, offered as de-fendant's Exhibit No. 7 received and filed, marked De-fendant's Exhibit No. 7.

"Q. I would like to ask Mr. Pillard if he received a letter from me every two weeks up until now?

"A. I never read one of them, threw them in the fire.

"Q. You received them, Mr. Pillard?

"A. Saw letters and didn't know what they were.

"Q. Mr. Pillard, did you say that I visited you at the Big Tree Road after you left New Smyrna?

"A. I said you were running out there all the time, all hours of the night, picking up rides.

"Q. I see, well did I ever bring anybody out there with me?

"A.   I saw some person there with you once, didn't know who it was."

This is not a case in which we are reversing the Chancellor's findings on conflicting evidence, but we must reverse the decree because we do not find any evidence which shows that the defendant deserted the complainant, that she ever refused to live with him or that she ever by any act drove him away from any place where they were living together.   The evidence does show that upon some occasions when he had left her and had not provided for her she had caused him to be arrested charged with non-support and had made complaints about his neglect of her which may have caused him some embarrassment, and, though it is not material to the case here, the record also shows that sometime after their first divorce and before their second marriage, and after they had been living together without the formality of a second marriage, she caused him to be arrested, prosecuted and convicted in Michigan of bigamy, she then claiming that she had become his common law wife and that he had violated the law of Michigan by marrying another woman while the respondent was his common law wife. That part of the record cannot be held against her because after all that had happened and he had served time in the penitentiary he met and married her again in New Orleans.

The record indicates that neither of them could live happily either with or without the other.   But, be that as it may, the record does not support the decree.   Therefore, it should be reversed .and the cause remanded .with directions that the bill of complaint be dismissed.

So ordered.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.