**SARAH C. FEUER v. IRVING W. FEUER**

22 So. (2nd) 641          June Term, 1945
June 29, 1945          En Banc

*Hazard & Thames,* for appellant.

*J. L. Gogdill* and *P. Guy Crews,* for appellee.

THOMAS, J.:

This cause reached an issue upon the bill, the answer and counterclaim, and the answer to the counterclaim, whereupon the chancellor appointed a special master to hear the testimony and report it with findings and recommendations.

There seems no need to dwell upon these pleadings, or the contents of the report except with reference to a jurisdictional feature, because we are inclined to agree with the appellant's position that errors were committed in the procedure before the master, and before the chancellor himself when the final hearing was held.

The present counsel for appellee, Mr. Crews, represented her on the bill; Mr. Frank F. L'Engle signed the answer and counterclaim of appellant; Mr. J. L. Cogdill appeared alone as solicitor on the answer to the counterclaim.

At the first hearing before the master the last two attorneys appeared and participated. At its conclusion the master announced that he was "just continuing the hearing indefinitely sine die." He next entertained the cause nearly two months later, when three witnesses for the plaintiff were interrogated by Mr. Cogdill, but there is nothing whatever to show that the defendant, her original counsel, Mr. L'Engle, or any other counsel representing her was present. Nor does the record disclose that any notice was given her on her counsel that testimony would be received by the master. In the record immediately following the transcription of this testimony are to be found the recommendations of the master and the notice of filing his report, given to Mr. Cogdill and Mr. Samuel Kassewitz, whose name nowhere else appears in the record. Then came the final decree, and the record again is silent upon any notice that the cause would be presented for disposition. In short, sometime after filing the bill Mr. Cogdill succeeded Mr. Crews, as is evidenced by the signature on

the answer to the counterclaim and the activities of the latter in appearing before the master and examining the witnesses. We can discover no explanation, though, for the disappearance of Mr. L'Engle and the reference to Mr. Kassewitz in the notice of filing the master's report.

In this situation we must assume that neither appellant nor her counsel had notice of the second hearing before the master, the report of the master to the court, or the final hearing. Had the record of such notices been extant they would surely have been incorporated in the transcript at appellee's instance, even had they been overlooked by the appellant. The mention of Mr. Kassewitz in the one instance is of small consequence because he was apparently an absolute stranger to the suit, had not accepted the grave responsibility of representing appellant, and had taken no step whatever in her behalf.

There having been no decree pro confesso, appellant or her counsel was entitled to notice of the second hearing to take testimony (Section 63.59, Florida Statutes, 1941, and F.S.A.) and of the master's report (Section 63.65, Florida Statutes, 1941, and F.S.A.) and of the final hearing. See Mote v. Morton, 52 Fla. 548, 41 So. 607. Where the record does not reveal notice of filing the master's report or its express or implied waiver and a final hearing is held without notice, the decree must be reversed. Cepero v. Hartridge, 51 Fla 409, 41 So. 192. Under the 1931 Chancery Act, Section 63.65, supra, the court is required to confirm the master's report in the absence of exceptions, but he must hear any exceptions upon reasonable notice. Here the confirmation was error, primarily because the lack of notice of filing the report must be construed as a failure to afford the appellant an opportunity to challenge the master's conclusions. It is only when a decree pro confesso is entered that "no notice of any motion, hearing or other proceeding . . . shall be required. . . ." Paragraph 2, Section 63.76, Florida Statutes, 1941, and F.S.A. Of course notice to appellant's solicitor of record would have been the equivalent of serving her. Paragraph 1, 63.76, supra. Obviously, had there been some reason for inability to reach the solicitor, service upon her would have

sufficed. There is no indication in the record of an attempt to pursue either course.

For the reasons already given we feel impelled to reverse the decree, but we shall not stop here because we think one more question should be determined by us for the benefit of the litigants, and the chancellor when the matter again comes to him for consideration. It is, the jurisdiction of the court over the subject matter in the light of such testimony as has been given with reference to the residence of the plaintiff immediately prior to filing his bill.

As we have said, the plaintiff testified at the first hearing and his three witnesses at the second. The bill was filed January 24, 1944, and when the matter was heard the following June 15 the plaintiff testified he had resided in Florida since September 25, 1943. Only one witness corroborated his statement of residence, and the substance of his evidence was merely that the witness had corresponded with the plaintiff when he first came to Florida in September, but she had known him only since November, the second month before the bill was filed. This is not such substantiation of the vital fact of residence as would give the court jurisdiction to entertain and determine the issues. Chisholm v. Chisholm, 98 Fla. 1196, 125 So. 694; Taylor v. Taylor, 132 Fla. 690, 182 So. 238; Section 65.02, Florida Statutes, 1941, and F.S.A. The plaintiff stated that at the time of the hearing he was serving in the United States Navy, but by his own testimony he was not inducted until April 25, 1944, three months after his bill was filed; so he may not benefit by the provisions of Chapter 21966, Laws of Florida, Acts of 1943, as construed by this Court in Mills v. Mills, 153 Fla. 746, 15 So. (2nd) 763.

The appellee tendered at the time of the argument here two affidavits describing telephonic conversations among the master, Mr. Cogdill, and another member of the Jacksonville bar by which hearings for the taking of testimony were attempted to be fixed and in which it was developed that Mr. L'Engle had retired from the practice of law and had turned his business over to someone else who, when inquiry was made of him reported that Mr. Kassewitz represented the ap-

pellant. In the first place, this method of supplementing by extraneous matter the record compiled in the chancery court is not approved; in the second place, the contents clearly indicate that there was no such definite notice of the steps in the cause as would satisfy the requirements of the law; and in the third place, there was no regular withdrawal of Mr. L'Engle from the case, substitution of Mr. Kassewitz and acceptance by him of the duties which in his capacity as solicitor he would owe to the appellant.

In the event a client wishes to change counsel, both client and attorney are duty bound to procure an order of the court approving the withdrawal and the substitution. Diem v. Diem, 136 Fla. 824, 187 So. 569.

In harmony with equitable principles an attorney is obligated to conduct to its termination any action in which he represents a party, and he cannot sever the relationship with his client except for good cause. Stark County v. Mischel, 42 N. D. 332, 173 N. W. 817. Notice should be given by the client to the attorney in case of discharge; also the attorney who intends withdrawing should give his client notice in order that new counsel may be employed to succeed him. People ex rel. Chicago Bar Association v. Sullivan, 279 Ill. 634, 117 N. E. 134. In either case an order of approval should be obtained from the court. Clinton C. Tripp v. Santa Rosa Street Railroad Company, 144 U. S. 126, 12 S. Ct. 655, 36 L. Ed. 371; Diem v. Diem, supra.

Because of the failure to give notice of taking testimony, of filing of the master's report, of final hearing, and because of the insufficency of the testimony to establish the prerequisite residence the final decree is reversed with directions to proceed with the controversy from the time the first hearing closed, June 15, 1944.

Reversed.

TERRELL, BUFORD and SEBRING, JJ., concur.

CHAPMAN, C. J., BROWN and ADAMS, JJ., dissent.