Bernard S. Meyer, J.
This action was commenced by plaintiff wife as an action for separation. On her application for alimony and counsel fees, it appeared from the affidavit of defendant that a divorce had been granted him in the State of Florida. The Special Term Justice, therefore, referred the motion to the trial court. Plaintiff thereafter was granted permission to amend her complaint to add a second cause of action for a judgment declaring the invalidity of the Florida divorce, and, on appeal, the order allowing the amendment was affirmed (8 A D 2d 724).
At the opening of the trial, defendant withdrew his fifth defense and also moved to dismiss the cause of action for a declaratory judgment as unnecessary, relying on Garvin v. Garvin (306 N. Y. 118). The Garvin case establishes that a judgment of separation is conclusive that a valid marriage exists and makes unnecessary a declaratory judgment. Hersh v. Hersh (5 A D 2d 874, affd. without opinion 5 N Y 2d 878), establishes that the obtaining of an ex parte foreign divorce is not cruelty, and where the parties have previously been living apart is not abandonment warranting a separation. The mere existence of the foreign divorce, therefore, constitutes no assurance that a separation will be granted even though the foreign divorce is held invalid. It follows that a plaintff must be permitted to plead and adduce proof on both causes of action, even though if separation is decreed, a judgment declaring the invalidity of the divorce will be denied (Hollister v. Hollister, 288 N. Y. 528; Goshin v. Goshin, 279 App. Div. 668). On this basis the motion was denied as premature, but since I find after trial that the Florida decree is invalid, and plaintiff is entitled to judgment of separation, I sustain defendant’s sixth separate defense to the declaratory judgment cause of action, and, applying the rule of the Hollister case, dismiss the second cause of action.
The parties were married on November 5, 1953. Defendant was then 69 years of age and plaintiff 55. Both had been previously married. Defendant is a builder and has been responsible for the construction of a large number of homes in and around the Syosset area. The parties first lived in New Hyde Park, then moved, to Split Rock Road in Syosset and then to 26 Lucille Drive in Syosset. During each of the years after their marriage they went to Miami for periods from six weeks to three months and during 1956, the defendant purchased a lot and built a house on Keystone Drive in Miami. While defendant in that year obtained an estimate for moving his furniture to Florida, it is undisputed that the parties never *911 moved into the house permanently; that defendant continued to work as a builder in the Long Island area through 1957 and registered to vote in New York in the 1957 elections. On January 4, 1958 the parties, together with the defendant’s son by his first marriage, who was also his partner in the building business, drove to Miami, arriving there on January 8. The evidence indicates that before they left, it was understood that defendant intended to build some houses in Miami, but does not substantiate an intention at that time to make Florida his permanent residence. A good portion of defendant’s clothes were left at the Syosset home. No furnishings other than a few linens were taken to Florida. No effort was made to cut off the telephone or other utilities at the house. It is not disputed that upon arrival in Florida the parties obtained the bare minimum of furniture (that is three cots, a table and a few chairs) in order to permit them and the defendant’s son to stay at the Keystone Drive house until it was sold, it having been agreed before they arrived that the house would be sold. It is also not disputed that on February 5 defendant filed his declaration of domicile and citizenship under the Florida law. That declaration was dated January 30, and stated that since the first day of January, 1958 defendant had been a bona fide resident of the State of Florida. The evidence further shows that on the 26th day of February, 1958 his car, which had been previously registered in New York, was registered with the Florida Motor Vehicle Commissioner. His testimony was that this was done because when he filed his declaration of domicile and applied for a homestead exemption with respect to the Keystone Drive property, he was told that he could not obtain a homestead exemption unless his car was registered in Florida. This and the use of the false January 1 date in the declaration suggest, and I find that defendant’s purpose in filing the declaration of domicile and changing the registration of his automobile was to obtain the homestead exemption rather than to effect a bona fide change of domicile.
In March, the Keystone Drive house was sold and plaintiff and defendant moved to an apartment which was admittedly a temporary place of abode. Defendant had by that time purchased land and begun the erection of two model homes. Defendant testified that at this time the parties were looking for a small house for themselves. On April 19, plaintiff, in company with defendant’s son returned from Florida to New York. From defendant’s testimony, it is clear that he expected to return to New York some time in June and to spend some time fishing in New Hampshire thereafter. The evidence also indicates that defendant expected that when plaintiff returned to *912 New York she would attempt to sell the Lucille Drive house in Syosset and there is also evidence that the house had been listed with a real estate broker by defendant’s son as early as February 15, 1958. On May 17, the parties conversed by telephone. During the course of this conversation, so defendant claims, plaintiff told him that if he were planning to come up to New York for Memorial Day, he had better not, that “ he would get sick if he did. ’ ’
On June 4, 1958 defendant’s verified complaint in the Florida divorce proceeding, in which the summons was also dated June 4, was mailed to plaintiff from Florida. Defendant testified that he had not consulted an attorney with respect to divorce until a few days before the complaint was drawn. Apparently the May 17 conversation caused him to decide upon divorce, and crystallized his intention to make Florida his permanent home. It is undisputed, however, that he has remained in Florida and until he returned for the purpose of the trial of this ease had not returned to New York; that he erected a total of nine houses there, of which five have been sold and four remain unsold; that he has a bank account there, but also has continued to have financial interests and accounts in New York. Since those interests and accounts have been sequestered under an order of this court, their continuance would have no bearing on the question of defendant’s domicile.
On the above facts, defendant urges that he was domiciled in Florida from and after January 8, 1958. While as hereafter appears, it is not necessary for me to determine the exact moment when defendant became domiciled in Florida, were 1 required to do so, I would find that date to be June 1, 1958, at which time he appears to have had a clear intention to transfer not only his business activity but his personal residence to Florida. Whether his domicile was acquired when he arrived in Florida on January 8 or, as I find, when his intention crystallized on June 1, he was domiciled in Florida when the divorce complaint was filed.
Defendant then argues that since he was domiciled in Florida when the complaint was filed, the Florida court had jurisdiction to grant a valid divorce, notwithstanding the fact that defendant had then resided in Florida less than the six months required by section 65.02 of the Florida Annotated Statutes, and that court having granted a divorce, this court cannot go behind the Florida decree and inquire into the question of residence. He cites as authority for his argument the cases collected in 2 A. L. R. 2d 291, and Restatement, Conflict of Law (§ 110, comment b) which reads, in part, as follows: “ The requirement *913 that the residence must have continued for a certain number of months or years is not jurisdictional, in the sense in which that word is used in the Restatement of this Subject; and the finding of the court on length of residence is conclusive in the courts of another "state, provided the jurisdictional requirement of domicile at the time suit is brought is satisfied.” (See, also, Goodrich, Conflict of Laws [3d ed.], § 129, p. 404; Snow, Recognition of Sister State Divorce, 25 Brooklyn L. Rev. 278, 288.)
The short answer is that, as will be hereafter demonstrated, Florida law permits a defendant in an ex parte proceeding to have a decree set aside at any time where the record does not show by corroborated proof residence for the required period; that the Full Faith and Credit Clause (art. IV, § 1) of the United States Constitution and section 1738 of title 28 of the United States Code, enacted in pursuance thereof, permit collateral attack in the forum where such attack would be permitted in the rendering State (Cook v. Cook, 342 U. S. 126; Johnson v. Muelberger, 340 U. S. 581; People ex rel. Halvey v. Halvey, 330 U. S. 610; Adam v. Saenger, 303 U. S. 59; Berkman v. Ann Lewis Shops, 246 F. 2d 44; Bieck v. Radmin, 14 Misc 2d 416, affd. without opinion 7 A D 2d 712; Richards v. Richards, 2 Misc 2d 596; Phillips v. Phillips, 15 Misc 2d 884); that neither any principle of res judicata (see Restatement, Judgments, § 10; § 11, comment g; § 33, comment d; § 74; Gavit, Jurisdiction of Subject Matter and Res Judicata, 80 U. of Pa. L. Rev. 386) nor any rule of comity (Gould v. Gould, 235 N. Y. 14, 29; People v. Baker, 76 N. Y. 78, 88) mandates recognition of such a decree by the courts of New York; and that, since New York will permit collateral attack upon its own divorce judgments, whether voidable only or absolutely void (Matter of Spring, 280 App. Div. 642), no unconstitutional discrimination (U. S. Const. art. IV, § 2; Estin v. Estin, 334 U. S. 541, 549, 552; Vanderbilt v. Vanderbilt, 1 N Y 2d 342, 352, affd. 354 U. S. 416) occurs when New York permits such a Florida decree to be collaterally attacked.
Section 65.02 of the Florida Annotated Statutes requires that ‘ ‘ the complainant must have resided for six months in the state before the filing of the bill of complaint.” This is construed by the Florida courts to require that the complainant has had residence for the necessary period “ next preceding the date of filing [his] bill of complaint,” (Chisholm v. Chisholm, 98 Fla. 1196; emphasis by the court); that there is no jurisdiction of the subject matter unless the necessary residence is shown, that residence in the statute means domicile, that jurisdiction *914 cannot be assumed by decree pro confesso and that there is no jurisdiction to enter a decree pro confesso unless the necessary residence is shown. (Kutner v. Kutner, 159 Fla. 870; Phillips v. Phillips, 146 Fla. 311; Wade v. Wade, 93 Fla. 1004.) It is likewise clear from the Florida cases that where the lack of jurisdiction appears from the record, the decree is absolutely void and may be set aside at any time. (Chisholm v. Chisholm, supra; Wade v. Wade, supra; see Bryant v. Bryant, 101 Fla. 179; Dye v. Dolbeck, 114 Fla. 866.)
In the Chisholm case, a decree pro confesso was held to be jurisdictionally defective and absolutely void and was set aside by the court more than a year after the decree was entered. There the only testimony in the record with respect to residence was the uncorroborated testimony of the complainant. The court held that in the absence of allegation in the bill and establishment by proper proof of the required residence, there was no authority to grant a decree.
Defendant says that in Aldrich v. Aldrich (153 Fla. 856)) Rollins v. Rollins (155 Fla. 83), and Kleinschmidt v. Kleinschmidt (47 So. 2d 324 [Fla.]) the Florida court has recognized a distinction between residence and residence for the required period. It has, but only with respect to the procedural problem whether a defense of lack of residence should be raised by special appearance or by answer. The Rollins case makes clear that “ proof of residence for the required period was indispensable to a final decree but not essential to ‘ proceeding with a suit.’ ”, and Fairlamb v. Fairlamb (156 Fla. 104) relied on in Kleinschmidt, together with the Aldrich and Rollins cases, held ‘ ‘ that his residence in the State of Florida, if any, was not sufficient to give the Circuit Court of Pinellas County jurisdiction of the subject matter and was not sufficient to comply with the requirements of Sec. 65.02. ’ ’
We are thus brought to consideration of the Florida decree obtained by defendant herein. The decree pro confesso in that proceeding was not introduced. The final decree contains no express finding with respect to the residence of defendant (plaintiff in that proceeding). The complaint dated June 4, 1958 alleged in paragraph I ‘ ‘ That your Plaintiff is a resident of Miami Beach, Dade County, Florida, and has been a resident of the State of Florida, for more than six months last, past and immediately preceding the filing of his Complaint for Divorce ”. The transcript shows that while defendant in his testimony referred to the fact that he had built a home for himself in Miami in 1956 and lived there over four months, his answer to the question, ‘ ‘ How long have you lived in Dade *915 County, Florida?” was, “I live since — from first January.” The corroborating evidence offered by the witness Michael was in the form of affirmative answers to the two questions: ‘ ‘ Have you seen him frequently since December ■ — January 1, 1958? ” and “Has he been living here regularly since December of 1957? ” neither of which, of course, establish a beginning date in December even if the answers were true. Since the testimony thus fails to show residence for six months next preceding the filing of the bill of complaint, the court had no jurisdiction of the subject matter. Its decree is, therefore, invalid and defendant’s first defense fails. Since the Florida decree is invalid it constitutes no bar to the granting of a separation in this proceeding.
Plaintiff urges that she is entitled to a separation on the grounds of abandonment and nonsupport. Defendant’s third defense is that plaintiff abandoned him when she returned to New York on April 19. This defense clearly is not sustained by the evidence. Defendant admits that plaintiff told him the night before she left Florida that she was suffering from an illness for which she wished to see her doctor in New York, that defendant then instructed his son to obtain an airline reservation for plaintiff, paid for the ticket and furnished her with checks totaling $1,300, which by his own testimony he considered sufficient for her needs for approximately five months; and that upon arrival of plaintiff and defendant’s son at the Lucille Drive house, a call was made to defendant in Florida to let him know that they had safely arrived. Clearly also defendant’s institution of the Florida action without prior notice to the plaintiff and his failure to furnish her with any funds after April 19, 1958, or to communicate with her after early June, 1958, establish abandonment. The Hersh case (supra) is not to the contrary on the issue of abandonment since in that case the parties had voluntarily separated before the action was commenced in the foreign court. Unless, therefore, plaintiff can be said to have been guilty of misconduct sufficient under section 1163 of the Civil Practice Act, to constitute justification, plaintiff must prevail.
Defendant’s second and fourth defenses set up such claimed misconduct. The second defense, which alleges that since April 19, 1958 plaintiff has declined and refused to cohabit with the defendant and to perform her marital duties, and that defendant at all times has been and still is ready, willing and able to provide a home for plaintiff, is, however, disproven by defendant’s admission that he procured the Florida decree and that he has failed to communicate with plaintiff since *916 early June, 1958. The fourth defense alleges plaintiff’s ungovernable temper, dissatisfaction with the homes provided her, constant changing of her mind with respect to where she wished to live, attempted interference with his business transactions and embarrassment of the defendant in his social relations with his children and with others. Clearly the allegations of the fourth defense would not constitute grounds for a separation, but Russ v. Russ (3 A D 2d 888, affd. without opinion 4 N Y 2d 743) establishes that a defense of justification under section 1163 of the Civil Practice Act does not require proof rising to the level of cruel and inhuman treatment. Unfortunately the facts in that case are not set forth in detail, the decision referring only to “ the relations which existed between the parties for a substantial period of time, and respondent’s attitude toward his xvife.” Similar general language may be found in Lowenstein v. Lowenstein (232 App. Div. 569, 570, “ so beset and maltreated that no reasonable woman would endure the continuance of her union”). The cases which detail the course of conduct involved, however, show acts of a more sustained and grave nature than are involved in the instant case. Thus Murphy v. Murphy (296 N. Y. 168) concerned a xvife xvho cursed her husband in the presence of their children, put salt in his sugar, water in the gas tank of his car, daily tied his clothes in knots, assaulted his daughter by an earlier marriage, and called the police to arrest her husband; Barber v. Barber (168 App. Div. 212) involved a wife who was intemperate, lacking in self-control, txvice took the children into a closed room and turned on the gas, took money from her husband’s pockets and taught the children to slander their father in their prayers, and Marino v. Marino (145 N. Y. S. 2d 571) involved a xvife who in addition to constant quarreling, made a number of false promises to join him in the city where he was working, publicly consorted with other men, and ‘ ‘ accorded her husband and her responsibility as a wife a secondary place in her thinking and her conduct.” While the evidence in this case indicates that the reason the parties did not move into the Keystone Drive house in Miami in 1956 was plaintiff’s unwillingness to stay there, defendant acquiesced in that. The evidence, however, sustains plaintiff’s claim that her return to New York in April, 1959 was with defendant’s acquiescense and not because of any refusal on her part to remain with her husband at a home he had established out of the State. Whatever was said in the May 17 telephone conversation that made him decide precipitately and xvithout either discussion or prior notice to plaintiff to begin the Florida *917 proceeding was neither itself justification nor the culmination of a course of conduct justifying his doing so. Defendant is a man used to coming and going as he pleases and to being the completely dominant member of his family relationships. Perhaps because of that attitude, perhaps because of their respective ages, the parties have never come to grips with the problems created by their marriage and her new environment for plaintiff, a woman long used to working for her living and to living in the crowded conditions of metropolitan New York. That plaintiff may have had difficulty in adjusting to her new relationship with defendant’s already grown family and to living in an area where she had neither close neighbors nor members of her own family nearby, that the problems thus created may have tried defendant’s patience, that plaintiff’s loneliness may have caused her at times to react in an irritable and nagging fashion, that there may have been bickering and arguments between them as a result does not constitute conduct on plaintiff’s part that would justify defendant in terminating the obligations he undertook when at his age he entered into a second marriage with a person of plaintiff’s age and relative station in life.
In summary, I hold that the Florida divorce is invalid; that the defendant’s action in obtaining the Florida divorce entitles her to judgment of separation and the plaintiff has sustained her burden of proving (Harfield v. Harfield, 3 A D 2d 931) that defendant’s actions were without justification.
There remain the questions of alimony, both temporary and permanent, and of counsel fee. The evidence shows that the parties lived in a house in New Hyde Park worth in excess of $20,000, a house on Split Bock Boad which was sold for $36,000, and a house at 26 Lucille Drive, which is now worth $25,000 and on which there is a mortgage, the present balance of which is $16,509.02; that the house erected in Florida on Keystone Drive was sold for $27,000; that defendant owned a 1954 Cadillac; gave plaintiff $50 a week for the table and additional moneys when the family or other company was at the home for dinner; that defendant went on hunting and fishing trips at irregular intervals during their marriage and spent from six weeks to three months of each year during their marriage in Florida. In addition to his equity in the 26 Lucille Drive house, it is admitted that a balance of $1,421.33 maintained in an account in defendant’s name in trust for his son is the property of the defendant; that he is a one-half owner of the corporation which built the homes in Florida and which has a net, worth of approximately $5,500 and that he *918 is also one-half owner in two construction corporations engaged in business on Long Island and which are still in business although apparently insolvent and no longer actively building. It is also admitted that defendant has drawn large sums from the Florida corporation, and that prior thereto he also withdrew substantial sums from the two Long Island corporations. It is claimed that these withdrawals represented return of capital rather than income. Defendant’s tax returns which show adjusted gross income of $24,137.87 in 1952, $16,619.80 in 1953, $14,300 in 1954, $12,575.26 in 1955, $5,125 in 1956, $3,912.83 in 1957, and $380.68 in 1958 substantiate that defendant has so treated these withdrawals for tax purposes. Taking into consideration the age of the parties, the length of their marriage, their standard of living, the fact that defendant has been drawing on capital, and present physical condition and requirements of both parties, I fix alimony in the amount of $100 per week and direct that such payments commence October 30, 1958, that being the return date of the motion for alimony and counsel fees made before Mr. Justice Kusnbtz and referred to this court. For the services of her counsel, including his out-of-pocket expenses, in the investigation of the facts and of the Florida law, in preparation of the complaint and amended complaint, in preparing and arguing the motions for alimony, injunction, sequestration and to amend the complaint, in the argument of the appeal and in the preparation and six-day trial of the instant action, counsel fee is fixed at $2,500. Plaintiff’s request that a separate fee be allowed for a Florida attorney is denied. While I do not doubt that section 1169-a of the Civil Practice Act authorizes me to make a separate allowance for the making of a factual investigation with respect to the Florida divorce or for an expert witness on Florida law under the head of “sums of money necessary to enable the wife, to carry on * * * the action ”, the Florida attorney did not testify as an expert in this proceeding and there is nothing in the record to show what services he rendered in investigating the facts.
The above constitutes the decision of the court under section 440 of the Civil Practice Act and all motions on which decision was reserved are decided accordingly. Settle judgment on notice granting plaintiff judgment of separation, with costs, and fixing alimony and counsel fee in accordance with the foregoing. [See, also, 21 Misc 2d 563.]