GEORGE H. BOWERSOX *v.* ELLEN BOWERSOX.
[No. 32, April Term, 1929.]

*Decided May 24th, 1929.*

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*T. Lyde Mason, Jr.,* for the appellant.

Offutt, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Baltimore County, dismissing appellant's bill of complaint, in which he prayed that he might be divorced *a vinculo matrimonii* from the appellee on the ground that she had abandoned him, and that such abandonment had continued uninterruptedly for more than three years.

The appellant, George H. Bowersox, in his bill alleged that he was married to the appellee Ellen Bowersox on February 19th, 1925, that at the time of the marriage he was fifty-nine and she sixty-eight years of age, that after the marriage at her request they went to live in her home, and had lived together there for but a few weeks when she began to treat him with great cruelty and harshness, that she refused to cohabit with him, that finally her conduct became so intolerable that he was forced to leave her home, that since June, 1925, they had not lived together or cohabited, and that their separation was deliberate, final, and without hope of reconciliation.

The defendant, although duly summoned, failed to appear, and, on December 4th, 1928, a decree *pro confesso* was entered against her, and the case referred to an examiner for testimony. On January 4th, 1929, the examiner returned the testimony which he had taken, but, the court being of the opinion that that testimony was not sufficient to support the bill, it was referred back to the examiner, more testimony

was taken, and, on March 1st, 1929, that testimony also was returned.

An examination of all the testimony shows that four witnesses were sworn for the appellant, and, in valuing their testimony, it may be noted that the hearings were *ex parte*, and that the vital and controlling issue in the case was whether the conduct of the appellee justified the appellant in leaving her. The only direct testimony relating to that issue was that given by the appellant himself, which tended to prove these facts.

At the time of the marriage Bowersox was a widower, and his wife had been twice married and twice divorced. Although he had a home of his own, to gratify her and at her request he went to live at her home. Their first trouble occurred some three months after their marriage, when without any apparent reason she left his bed and refused and persisted in her refusal to further cohabit with him. From that time until he left she slept apart from him, neglected his comfort, subjected him to a continuing series of petty inconveniences and annoyances, and even threatened to have her son "beat" him "up." Finally, to quote the witness: "On the 21st day of June, 1925. I was sick that morning—felt very bad with a cold, and I laid in bed until seven o'clock, and she slammed every door downstairs. I finally got up and went downstairs. There was no fire, and I asked her how about a little breakfast, and she told me if I wanted any breakfast to get it myself. I looked around and there was nothing to eat there, so I went upstairs and packed up my clothes and went out. I went to my son-in-law's. Q. You have never lived with her since June, 1925? A. No. Q. Do you think there is any possibility of a reconciliation between you and Mrs. Bowersox? A. No, sir; never will be. Q. Did she ever make any complaint to you about your not treating her right? A. No, sir. Q. How did you treat your wife? A. I did everything in the world for her. Everything she asked me to do, I tried to do for her. Q. You gave her money to supply her wants and household expenses? A. Yes; she

got her regular supply every week and if she wanted any extra money she got it. Q. Judging from the manner in which you say your wife acted toward you, it would appear that she is a very peculiar woman. What do you think about that? A. She was a very peculiar woman and the way she acted it seemed to me that her mind must have been a little weak."

We will pass without comment the value of this evidence, for, whatever its weight may be, in our opinion it is not sufficient to support the bill unless corroborated. Code, art. 35, sec. 4; *Dicus v. Dicus,* 131 Md. 88; *Owings v. Owings,* 148 Md. 127; *Marshall v. Marshall,* 122 Md. 694. But the only testimony offered to corroborate it was that of James Alexander Dinsmore, appellant's son-in-law, who repeated certain self-serving declarations of the appellant explaining the separation between him and his wife, which were obviously hearsay, and that of Mrs. Emma V. Dinsmore, the mother of the last-named witness, and Mrs. Elizabeth Scheining, appellant's daughter, who gave much the same testimony, and which was also open to the same objection. The only relevant fact of which any one of these witnesses had any direct knowledge was that the parties to the cause had actually been living apart for more than three years. But as it did not appear that any one of them had ever visited their home while Mr. and Mrs. Bowersox were living together, manifestly they could have had no direct knowledge of the cause of their separation. They did say that Mr. Bowersox seemed to be "worried", "downhearted" and "depressed", but that fact alone could scarcely be regarded as sufficient corroboration of his version of the separation between him and his wife. The question therefore is whether such testimony sufficiently corroborates the testimony of the appellant to justify the court in granting the relief prayed in the bill.

In *Heinmuller v. Heinmuller,* 133 Md. 495, it is said that the object of the statute was to prevent collusion, and that, where any possibility of collusion was precluded, the "corroboration need be slight," and that statement of the law is

generally accepted as sound. 19 *C. J.* 134. But, while that is true, nevertheless to gratify the statute the evidence offered in corroboration of the plaintiff's testimony given in a divorce proceeding must have some force and some substance, and evidence which is inadmissible under the settled rules of law because it is hearsay or irrelevant is not sufficient to gratify the requirements of the statute. To corroborate is to strengthen, and corrobative evidence is that which, when added to the original evidence, makes it stronger and more credible. Or, as was said in *Orens v. Orens,* 88 N. J. Eq. 34: "The corroboration of a petitioner's testimony, required by law, in order that a divorce may be decreed, need not be testimony given by another or other witnesses to all of the same identical facts to the minutest particulars, but only their giving such facts in evidence as already testified to by petitioner, or such circumstances tending to establish them, as renders petitioner's testimony so much more probable as to be legally acceptable, and which serves to empower the judge to accept the truth of the petitioner's whole story." See also *Williams v. Williams,* 78 N. J. Eq. 13; *Rogers v. Rogers,* 89 N. J. Eq. 1. But manifestly evidence which is properly excluded because it is hearsay or irrelevant is equivalent to no evidence at all. And while, in a contested litigation, evidence admitted without objection may, if it has any probative force, be accepted for what it is worth (*Sentman v. Gamble,* 69 Md. 293; 23 *C. J.* 39), that rule does not validate evidence, offered in an uncontested divorce proceeding, which, upon seasonable objection, would have been excluded. For in such case it is the duty of the trial court to "see that every rule of practice and trial is strictly complied with," 19 *C. J.* 149. If that were not so, the reprehension of collusion, so often expressed by the courts in such cases, would mean little, for the plaintiff could supply any needed corroboration by the simple expedient of repeating his complaints to sympathetic listeners who would be willing to testify that they heard him make them. So that in this case the fact that there was no objection to the incompetent testimony did not cure its in-

firmity, and the trial court, in dealing with the case, was bound to exclude it from consideration.

Excluding all hearsay testimony, the only evidence left which tends to corroborate the plaintiff's testimony is that he and his wife lived apart for over three years, and that at times he seemed to be "worried," "downhearted" and "depressed." But while, as stated in *Heinmuller v. Heinmuller, supra,* in actually contested cases slight corroboration is sufficient, this is not a contested case, and the facts referred to do not furnish even "slight corroboration." For the naked fact that the appellant lived apart from his wife was not in itself sufficient to charge her with responsibility for the separation, nor is it a necessary legal inference that wives are in all cases accountable for any "worried," "downhearted" or "depressed" appearance which their husbands may on occasion exhibit.

And since the complainant was not entitled to a divorce upon his own uncorroborated testimony (*Dicus v. Dicus, supra*), and as it was not sufficiently corroborated by any competent evidence, the bill of complaint was properly dismissed, and the decree appealed from will be affirmed.

*Decree affirmed, with costs.*