## JOHN C. ANDERS v. MATTIE ELIZABETH ANDERS

13 So. (2nd) 603
May 21, 1943
Rehearing Denied June 12, 1943

January Term, 1943
En Banc

*Clyde W. Atkinson* and *J. Lewis Hall,* for appellant.
*William Blount Myers,* for appellee.

ADAMS, J.:

This appeal brings for review a decree disallowing a divorce to the appellant husband on the ground of desertion.

The parties were married in 1933. The wife abandoned the home in October of 1936 and filed a statutory suit for separate maintenance. Section 65.10, Florida Statutes, 1941. That suit terminated by a final decree in December, 1937, in favor of the husband. In the separate maintenance suit, it was the wife's contention, based upon legal advice, that she

was justified in remaining separate and apart from her husband unless he would force his sister to depart from the home. After termination of the separate maintenance suit, the wife unreservedly offered to return. However, by that time the period of one year for desertion had run. When the husband refused to take her back, she then, upon further advice of her attorney, returned and remained under the roof without her husband's approval. Thereupon the husband brought suit for divorce charging desertion under Section 65.04, Florida Statutes, 1941.

It is apparent that the chancellor was governed largely by testimony relative to desertion which transpired prior to the decree in the separate maintenance suit. Was not the determination in such suit sufficiently conclusive to estop either party to further litigate the question of who was at fault in the separation.

It is true that an adjudication in the separate maintenance suit is not res judicata in a proceeding for divorce on the ground of desertion, for in the latter case the desertion must have existed for a period of one year, whereas in the former there is no required time limit. In other respects, the issues are so similar that other courts have held that an adjudication in the former would estop the parties to relitigate the same issue in another proceeding. Harding v. Harding, 198 U.S. 317, 25 Sup. Ct. 617, 4 L. Ed. 1066; Freeman on Judgments, 5th Edition, Vol. 2, page 1910; Vol. 31 C.J.S. page 194.

The wife absented herself from the home and made an issue of who was at fault for the separation. The issue was concluded adversely to her and we hold that she is now estopped to go behind that decree and show that the husband was responsible for the separation.

It is claimed by appellee that the record and decree of the Court in the separate maintenance suit was not plead and proven in this case. The answer to this is found in the wife's answer in the divorce suit wherein she admits the facts relating to the separate maintenance suit and the decree therein.

The wife also claims that even though she was at fault in attaching conditions to her offer to return up until the

final decree in the separate maintenance suit, that thereafter she unreservedly offered to return and the husband refused to take her back. By that time, however, a ground for divorce existed in favor of the husband and the question arises whether the husband was obliged to take her back.

Condonation is a conditional forgiveness of a matrimonial offense by the aggrieved party. It presupposes the existence of a ground for divorce and the privilege of forgiving the wrongful act rests with the innocent party and not with the offending party. Vol. 27, C.J.S., page 608.

Once the statutory ground for divorce because of desertion has occurred, the right to divorce becomes vested and it cannot be taken from the injured party except by his own act. 27 C.J.S. 571; 95 A.L.R. 231; McKay v. McKay, 172 Ark. 918, 290 S. W. 951.

The fact that the wife in this case might have acted in the best of faith on advice of her counsel in remaining away subject to the condition stated, will not alter her case. Neither will her plea be stronger because she insisted on returning and remaining in the home on advice of counsel. It all adds up to the proposition that if a successful marital status is dependent upon cohabitation on advice of counsel, it is unquestionably doomed to failure. When the evidence is considered in its entirety, it shows beyond a question of doubt that the marriage relation was and would remain intolerable.

It therefore appears that the chancellor misconceived and erroneously applied the law to the facts of the case. The decree should have been for a divorce to the husband as prayed. No other issues are involved. The decree is reversed with instructions for a decree not inconsistent with this opinion.

Reversed.

BUFORD, C.J., TERRELL and SEBRING, JJ., concur.

BROWN, CHAPMAN and THOMAS, JJ., dissent.

CHAPMAN, J., dissenting:

The record in this case discloses that Mattie Elizabeth Atkinson and John (Judge) C. Anders, both of Leon County, Florida, married at Camilla, Georgia, on October 14, 1933,

and a son was born to the marriage, and the parties cohabited together until about October 9, 1936. On August 31, 1936, Mattie Elizabeth Anders filed a suit for divorce against John C. Anders in the Circuit Court of Leon County, Florida, and on September 12, 1936, voluntarily caused a dismissal thereof. On October 9, 1936, under the provisions of Section 4989, C.G.L., she filed a bill of complaint in the same court and sought a decree for separate maintenance, awarding her the custody of their child, and for support money for the child, counsel fees, and other relief.

The cause was presented to the lower court on the bill of Complaint, the answer of the defendant praying for affirmative relief, and testimony submitted in support of the issues made by the pleading of the respective parties; and, after hearing argument of counsel on December 21, 1937, the lower court held: (a) that Mary Elizabeth Anders was not living apart from her husband through his fault and therefore not entitled to maintenance under the provisions of Section 4989, C.G.L. (b) Mattie Elizabeth Anders was awarded the custody of the child, with visitation privileges to the father; (c) the defendant was required to pay $25.00 per month for the support of the child; and (d) the costs of the suit and her counsel fees in the sum of $100.00 were taxed by the court against John (Judge) C. Anders.

On October 24, 1939, John C. Anders filed in the Circuit Court a bill of complaint seeking a divorce from Mattie Elizabeth Anders on grounds: (a) desertion; (b) ungovernable temper; and (c) extreme cruelty. The bill of complaint was attacked by her on the ground of want of equity, and the court, after a hearing of counsel, entered an order on April 5, 1940, sustaining the motion to dismiss for want of equity, and did order a dismissal thereof, but in the same order allowed counsel for the plaintiff ten days in which to file an amended bill of complaint.

Pursuant to the provisions of the order, the plaintiff filed an amended bill of complaint. While the prayer of the amended bill sought considerable relief, the relevant and material portions thereof are the allegations charging the wife with wilful, obstinate and continuous desertion of the

plaintiff for a period of more than one year, as provided by Subsection 7 of Section 4983, C.G.L. Legal desertion is alleged to have occurred between "shortly prior to October 9, 1936" and October 17, 1939.

They are: ". . . they lived together as man and wife until a short time prior to the 9th day of October, A. D. 1936, the exact date being unknown to your plaintiff except that it was prior to the 9th day of October, A. D. 1936, when the defendant, Mattie Elizabeth Anders, wilfully, obstinately deserted your plaintiff without any justification or excuse and continued to wilfully, obstinately and continually desert and abandon your plaintiff from some months prior to the 9th day of October, A. D. 1936, the exact date being unknown to your plaintiff and said willful, obstinate and continued desertion on the part of the defendant continued without any justification or excuse until the 17th day of October, A. D. 1939, although your plaintiff at the time of the desertion and for more than a year thereafter was ready, able and willing to live with the defendant as husband as she well knew, if the defendant would conduct herself as a wife should. . . .

". . . that during the past two years and four months after deserting your plaintiff she lived separate and apart from your plaintiff, after having wilfully and obstinately deserted him and has continued to live separate and apart from him with the said child living first at one place and then at another until on Sunday, the 8th day of October, A. D. 1939, she returned to your plaintiff's home at about ten o'clock at night with the said child and advised your plaintiff that she was returning on legal advice.

"Your plaintiff further alleges that since the return of said defendant he has not lived or cohabited with her, but that notwithstanding their living apart, as aforesaid, the defendant has continued to reside in your plaintiff's home and has frequently flew into fits of anger and rage, exhibiting towards your plaintiff and also towards your plaintiff's sister, who is residing with them and who has resided with him since he was deserted by the said defendant.

"Your plaintiff further respectfully requests this Honorable Court to take judicial notice of the testimony given

by the respective parties in that certain suit which terminated on the 21st day of December, A. D. 1937, in determining whether it would be to the best interest of said child that the custody, control and possession of same be awarded to your plaintiff or that the possession, custody and control of the said child should continue with the defendant."

The pertinent allegations of denial by the wife are viz.:

". . . this defendant denies that at any time prior to the 9th day of October, A. D. 1936, or at any other time she wilfully, obstinately deserted the plaintiff without any justification or excuse and continued to wilfully, obstinately and continuously desert and abandon the plaintiff for some months prior to the 9th day of October, A. D. 1936, the exact date being unknown to the plaintiff, and further denies that any wilful, obstinate and continued desertion on the part of this defendant continued without any justification or excuse until the 17th day of October, A. D. 1939, and this defendant denies that the plaintiff at the time of the alleged desertion and for more than a year thereafter was ready, able and willing to live with this defendant as her husband if this defendant would conduct herself as a wife should. . . .

". . . That on October 9, 1936, after the refusal of the plaintiff to take the defendant back under any circumstances, this defendant filed a suit for separate maintenance and for custody of and support money for the child, which suit terminated in the final decree of December 21, 1937, mentioned in the plaintiff's bill of complaint. That during the pendency of said suit this defendant made several efforts to get the plaintiff to take this defendant back and to make things pleasanter for this defendant at his home, but that the plaintiff always refused to do so.

That this defendant at all times was willing to return to said plaintiff during the pendency of said suit, provided the plaintiff would not permit his sister to live with the plaintiff and this defendant, and brought the separate maintenance suit aforesaid in the belief and upon legal advice that she was justified in refusing to live with the plaintiff if the plaintiff insisted on permitting his sister to live with them, and

in view of the unpleasant relations existing between this defendant and plaintiff's sister.

"That after the termination of said suit this defendant from time to time requested the plaintiff to permit her to return to him with her child and for the two of them to make the best of things that they could in order that the child of said marriage might have a home and the association and companionship of his father, there being no reservations to such request after such decree, but the plaintiff continuously and persistently refused to permit the defendant to return to him, so that this defendant on the 7th day of October, A. D. 1939, without plaintiff's consent, returned to the home of said plaintiff, and since said date the defendant has lived in the same house with the plaintiff, although the plaintiff and this defendant have not lived together nor cohabited as man and wife since her return, although this defendant has been at all times ready and willing to resume the marital relations."

Approximately 250 pages of testimony were adduced in support of the issues made by the pleadings. Material portions of the record of the files in the other suits between the parties were adduced. On final hearing, the lower court held that the plaintiff failed to establish by competent testimony legal desertion or wilful, obstinate and continued desertion for a period of one year by the wife of the husband, and dismissed the bill of complaint. The lower court, on petition of the plaintiff below, granted a rehearing and limited it to the sole question of whether or not the desertion was obstinate, within the meaning of Subsection 7 of Section 4983, C.G.L., from December 21, 1937, the date of the final decree in the separate maintenance suit, and October 17, 1939, the date of the wife's return to plaintiff's home, and whether or not plaintiff was willing to take defendant back during the period.

On June 29, 1942, the lower court, by an exhaustive opinion and decree, held that the plaintiff had failed to sustain the burden of proof required in such cases and dismissed the bill of complaint, thereby adhering to the final decree previously entered and an appeal therefrom has been perfected to this Court.

Counsel for appellant pose for adjudication the question viz.: where a court of competent jurisdiction in separate maintenance suit between husband and wife enters decree that the wife's absence from husband's home was not through any fault of the husband, and after such adjudication the wife continues to live separate and apart from the husband for a period of more than one year, and the testimony of the parties shows that the attitude and frame of mind of the wife relative to return to the husband in nowise changed after the decree, and that there was never any bona fide offer of reconciliation on her part, and the circumstances of the case show that no offer of reconciliation on the part of the husband would have been accepted, is the husband entitled to divorce on the ground of desertion?

Counsel for appellee contends that after a careful study and analysis of the issues made by the pleadings of the parties, the conclusion is irresistible, as sustained by the record, that no question is presented for adjudication. It was the view of the chancellor that the predominating question was whether or not the evidence adduced by the plaintiff established the elements of wilful, continued and obstinate desertion by the defendant of the plaintiff from December 21, 1937, the date of the final decree in the separate maintenance suit, until October 17, 1939, the date defendant returned to the home of the plaintiff.

It is elementary that the burden of proof in the case at bar was on the plaintiff to establish by a preponderance of the evidence wilful, obstinate and continuous desertion by the defendant of the plaintiff for a period of one year, or more, as required by Subsection 7 of Section 4983 C.G.L., as alleged in the bill of complaint, and denied by the defendant in her answer. See Chatham Inv. Co. v. Sunshine Investments, 98 Fla. 783, 124 So. 374; Whittaker v. Eddy, 109 Fla. 535, 147 So. 868.

On numerous occasions this Court has considered the sufficiency of the evidence to sustain wilful, obstinate and continuous desertion provided for in Subsection 7 of Section 4983, C.G.L., as a ground for divorce. The essence of a wilful and obstinate desertion by a wife consists of her refusing

to live with her husband when he performs his marital duties and wants her to live with him. See Hill v. Hill, 62 Fla. 493, 56 So. 941. When desertion is relied upon as a ground of divorce it is necessary to establish by a preponderance of the evidence that the desertion is wilful, obstinate and continuous for a period of one year. See Powell v. Powell, 77 Fla. 181, 81 So. 105. Where a young wife without her husband's consent goes to her parents' home, and soon thereafter the first child is born, and the husband makes no proper effort in the discharge of his duty to the wife and child and the wife and child remain away, the husband is not entitled to a divorce on the ground of statutory desertion. See Hill v. Hill, *supra*. Wilful, as defined in the statute, means intentional or on purpose, while obstinate means determined, fixed, persistent. See Mitchell v. Mitchell, 91 Fla. 427, 107 So. 630. Where the wife's desertion was wilful and obstinate in its inception, the time begins to run against the wife from the first desertion. See Woodward v. Woodward, 122 Fla. 300, 165 So. 46.

The opinion of the learned chancellor below is illuminating and exhaustive, and is, in part, viz.:

"In Schouler on Marriage and Divorce and Domestic Relations, Volume 2, page 1832, that eminent writer says: 'It may be laid down that legal desertion in the present sense of our divorce acts imports three things: (1) an actual cessation of cohabitation for the period specified; (2) the wilful intent of the absent spouse to desert; (3) desertion by that spouse against the will of the other. Unless these three concur there is no legal desertion established such as to justify a divorce in the petitioner's favor.'

"In short, a separation by mutual consent or by a ready acquiescence cannot be construed into legal desertion so as to constitute a suit for divorce like the present. . . .

". . . The evidence shows that the defendant herein left the home of the plaintiff on September 10, 1936, while the first divorce suit was pending, and two days thereafter she dismissed her suit for divorce. The evidence likewise shows that the defendant on two different occasions between the time of the dismissal of the original divorce suit and the commencement of the suit for separate maintenance approached

the plaintiff herein in an effort to effect a reconciliation, but without success. The defendant testified, and such testimony was not contradicted, that along about the first of October of 1936 she went to the plaintiff with her sister, Mrs. Green and her husband: 'We drove up in front of the house and called Judge Anders and he came out to the car and I immediately told him I came there to talk to him and I wanted to know just what his attitude was toward us coming back, and he didn't want to say. He would change the subject and tried to talk to my brother about fox hunting. He wouldn't pay any attention to what I said and I tried to talk to him and after a while I told him I wanted to come home and he said, 'I don't know what you want to do that for,' and I said, 'Well, I do, Judge, I want to come home. What I want to know is do you want me back. We had some kind of conversation concerning the difficulty between his sister and I, and I told him I was willing to let his family run his house for him if we could just live there under any conditions just so long as it was peaceable. He didn't answer me, so I asked him again. I said, 'Judge, do you want me to come back? I will come back under any conditions, you want me to come back.' He said no he didn't want me back under any conditions, and I said, 'Well, why?' He said 'Under the circumstances you can't come back.'

In November of 1936 and February and September of 1937 the defendant herein talked to the plaintiff with reference to her returning home and the plaintiff refused to permit her to come back, all such occasions being during the pendency of the separate maintenance suit. In her testimony the defendant said, 'I never did make up my mind that I did not want to go back there to live. I have always wanted to go back and still want to. I wanted to live with him anywhere at any time if only we could live in peace.' In reply to a question as to why she stayed away from her husband for a period of three years before she came back, the defendant stated, 'Well, when I left there my nerves were shot to pieces. I felt like I couldn't go under those conditions no matter what happened unless I could get better control of myself. I had gone down until I was a mere shadow of myself and I determined

if the Lord was willing I would build myself up to where I could take my part no matter what, and it took me three years, and I have proved it in the last nine months I can take it, although I cry sometimes.'

"A review of the evidence in this case shows no evidence supporting the charge of obstinate desertion of the plaintiff by the defendant, or that she ever refused to live with him when and if he requested her so to do or that she ever by any act drove him away from any place where they were living together. One of the material elements justifying a divorce on the ground of desertion is that such desertion must be not only wilful and continuous, but must be 'obstinate.'

"Obstinate means 'stubbornly and unreasonably adherent to one's own purposes, unyielding to argument or entreaty and resolutely bent on having one's way with little or no regard to the wishes or views of others.' New Standard Dictionary.

"A review of the evidence in this case shows that the plaintiff never made any attempt in any way to persuade the defendant to return to him after she left, but on the contrary the evidence as a whole showed a desire on the part of the defendant to return to her husband. She and several of her witnesses testified to the request that she had made of Judge Anders that she be permitted to return to her home, and it is apparent from the evidence that the plaintiff was glad to have her leave and never showed any desire to have her return. The plaintiff herein has failed to sustain the burden necessary for him to carry in this case, to-wit: wilful and obstinate desertion within the meaning of the statute. The Courts quite uniformly make an effort at reconciliation a condition of desertion except in certain particular cases where the application of that doctrine would work a hardship or injustice. In general the rule is that a divorce will not be granted for abandonment only if it appears that the parties may be reconciled by a reasonable effort on the part of the complainant. Certainly neither party can make a separation begun and prolonged by common consent a ground of divorce where neither has ever made an effort at reconciliation. The continued separation in such case is obviously to be deemed

with the consent of the parties and therefore not a legal desertion. The complaining spouse where both are at fault cannot claim a legal desertion by the other without showing that he or she has made faithful overtures to return and resume the matrimonial cohabitation. 17 Am. Jur. 210, Sec. 112.

"In the same work we find Section 117, that a distinction between the duty of the husband and a wife in divorce and separation, it is stated that, 'to require of a man the performance of an act looking to a reconciliation might be wholly just and proper under a state of circumstances, but the same requirement might be wholly improper if required of a woman.' Ordinarily, therefore, there is not the same obligation on a wife to endeavor to effect a reconciliation that there would be on a husband where the wife leaves her husband without cause. Ordinarily if the wife leaves her husband without legal excuse, he must make reasonable overtures for her return, otherwise her continued absence will not be deemed such desertion as will entitle him to a divorce. . . .

"The evidence fails to show that the plaintiff herein ever made any attempt in any way to persuade the defendant to return to him after she left, but does show that he acquiesced in her absence, making no overtures to induce her to return, and on the contrary failed to open the way to her when she informed him of her desire so to do.

"As the evidence clearly fails to show an obstinate desertion on the part of the defendant, the Court finds that the plaintiff has failed to sustain the burden of proof required in such cases, and therefore denies the relief sought, and the bill is hereby dismissed."

Under the law the husband has the right to establish his domicile and it is the corresponding duty of the wife to live in the home as established. If she refuses so to do, and the husband's conduct being upright and honorable in the premises, she places herself in the wrong. If the husband in good faith demands that she reside at the domicile selected, it is her legal duty to obey. See Hunt v. Hunt, 51 Fla. 631, 54 So. 390; Schouler on Marriage and Divorce, Vol. 1, par. 41. It is the duty of the husband to provide a home for his wife, where she must be recognized as the household mistress and the

husband cannot subject his wife to the interference: of his mother and other relatives to such an extent that she cannot endure it, and if the unreasonable interference is such that she leaves the home for this reason, then her desertion, while it may be wilful, is not in law considered as obstinate. See Par. 1642, *supra*. The duty to provide a home according to many authorities, impliedly directs that the wife in its occupancy will be free from abuse, ill treatment, attacks and unwarranted interference from the members of the household or visitors therein.

The decree of the court of December 21, 1939, based on the wife's separate maintenance suit against the husband, denied the relief sought and held that she was at fault by deserting her husband and the husband was free from desertion of his wife. It is contended that the testimony appearing in the present suit covering the period prior to December 21, 1939, is *res adjudicata* and it was erroneous, it is contended, for the court in the case at bar to consider the testimony against the appellant on desertion occurring prior to December 21, 1939. Counsel relies on Freeman on Judgments, Vol. 1, (5th Ed.) p. 1910.

The answer to this contention is that the pleadings and record fail to disclose that the contention of *res adjudicata* was ever presented, as here contended, to the lower court. We fail to find in the record where an opportunity was afforded the chancellor to rule on this contention. Our decisions recognize the doctrine and method of procedure. See Bell v. Niles, 61 Fla. 114, 55 So. 392; Quigley v. Cremin, 94 Fla. 104, 113 So. 892; Semple v. Semple, 90 Fla. 7, 105 So. 134; Jacques v. Wellington Corp., 133 Fla. 819, 183 So. 22.

However, the chancellor evidently gave due consideration to the doctrine of *res adjudicata,* because, in the opening paragraph of his opinion on rehearing he said:

". . . The question involved at the present time in this case is whether or not the elements of wilful, continued and obstinate desertion were present during the period of separation of the plaintiff and the defendant from the date of the final decree in the separate maintenance suit down to the date of the defendant's return to the plaintiff. There is no question

that the plaintiff and the defendant were separated, but the question is whether the separation was of such a character as to constitute wilful and obstinate desertion of the plaintiff by the defendant within the terms of the statute during that period. In order for the plaintiff to prevail the burden is on him to show that during the period between the final decree in the separate maintenance suit up to the date of the filing of the present suit he must show that during that period the defendant formed a wilful intent to end their marital relation by her continued separation from the plaintiff, and that such intent so formed during such period was obstinate. . . ."

The appellate court, on review of orders of the Circuit Court, should confine itself to the consideration of questions which were before the lower court and should not go beyond the record made therein. See Jacques v. Wellington Corp., 134 Fla. 211, 183 So. 718. Questions not presented in the trial court are not reviewable on appeal. Green v. Parmelee, 134 Fla. 289, 183 So. 726. Issues which were not in the pleadings and not considered by the trial court will not be considered by the Supreme Court on appeal. North v. Ringling, 149 Fla. 739, 7 So. (2nd) 476.

The record discloses that the chancellor awarded counsel for appellee fees for services rendered in the lower court in the sum of $1250.00. Petition for suit money and additional attorney's fees for appellee's counsel has been presented to this Court and the same has been carefully considered. It is my conclusion that the sum of $1250.00 allowed in the lower court is adequate compensation for representing the appellee in this Court and the petition should be denied. The motion to vacate the supersedeas and to strike certain parts of the record and the payment of costs as made by the appellee, and the rulings thereon, I think should each be denied.

I think the final decree appealed from should be affirmed.

BROWN and THOMAS, JJ., concur.