66 So.2d 268 (1953)
MARTIN
v.
MARTIN.
Supreme Court of Florida, Division A.
July 14, 1953.
Rehearing Denied July 31, 1953.
*269 J.F. Gordon and Leonard G. Egert, Miami, for appellant.
*270 Sibley & Davis and James Lawrence King, Miami Beach, for appellee.
SEBRING, Justice.
This is an appeal by the defendant below from a final decree rendered in a suit instituted in the Circuit Court of Dade County wherein the plaintiff was granted a divorce on the grounds of desertion and the defendant's claim for alimony and support money was denied.
During the course of the hearing upon which the final decree was predicated the defendant wife introduced into evidence a certified copy of a final decree theretofore rendered in her favor in an equity suit instituted by her in Connecticut, the original domicile of the parties, for the purpose of obtaining support money from her husband. See Martin v. Martin, 134 Conn. 354, 57 A.2d 622, 10 A.L.R.2d 463, for affirmance of decree by the Supreme Court of Errors.
The special master who conducted the hearings found that the Connecticut decree constituted a final adjudication of the events which led up to the separation of the parties, and, upon this and other evidence introduced at the trial, found and recommended that the plaintiff had failed to prove that subsequent to the date of the rendition of the Connecticut decree he had attempted in good faith to effect a reconciliation with his wife, and hence had failed to sustain the charge in his complaint that his wife had been guilty of desertion.
The chancellor sustained exceptions to the special master's report in an order which reads in part as follows:
"I have carefully reviewed the evidence and am of the opinion that the plaintiff's testimony corroborated by that of the witness, James M. Kelly, shows that, after the entry [on March 12, 1947] by the Superior Court in Middlesex County, Connecticut, of its judgment in the non-support action, the plaintiff offered unqualifiedly and unconditionally on several occasions to resume the marital relationship and sought in good faith a reconciliation. The master's finding that the plaintiff has failed to prove the material allegations of his complaint charging the defendant with wilful, obstinate and continuous desertion is not sustained because I am of a contrary view and think that the plaintiff is entitled to a decree of divorce * * *. No financial relief other than costs and counsel fees will be accorded the defendant."
Based on this order and findings the chancellor entered the decree of divorce from which this appeal has been taken.
Both parties to this appeal agree that the final decree in favor of the wife in the suit for separate maintenance instituted in Connecticut was decisive of the fact that the separation of the parties at the inception was due to the fault of the husband and constituted on his part a desertion of the wife. Anders v. Anders, 153 Fla. 54, 13 So.2d 603; Baptist v. Baptist, 130 Fla. 702, 178 So. 846. The husband maintains, however, that since the rendition of the decree he has sought on many occasions to effect a reconciliation with his wife and resume the marital relationship, and that his wife's refusal to accept his good faith offers in this regard has given him a just cause for a divorce on the ground of wilful, obstinate and continued desertion for a period of more than one year subsequent to the time of his first good faith offer and one year prior to the filing of his complaint in the cause.
In respect to this contention, the general rule appears to be that a separation which is sanctioned and authorized by the decree of a court of competent jurisdiction is neither wrongful nor unlawful and cannot be made a ground for divorce as against the party rightfully acting under the decree. Nelson on Divorce, sec. 4.13. Some courts have held that until such a decree is modified or abrogated by subsequent judicial order, no cause of action for divorce on the ground of desertion can accrue against the party in whose favor the separate maintenance decree was rendered. Weld v. Weld, 27 Minn. 330, 7 N.W. 267; Reibesehl v. Reibesehl, 106 N.J. Eq. 32, 149 A. 823; Jones v. Jones, N.J.Ch., 29 A. 502, 503. The latter decision turned largely upon the fact that a statute in New York, Code of *271 Civ.Proc. § 1767, where the separate maintenance decree had been entered, provided that upon proper application "a judgment for a separation * * * may be revoked, at any time, by the court which rendered it," and the court considered this statutory method of annulling the effect of the decree to be exclusive.
We think the better and sounder rule, in the absence of a specific statute to the contrary, is that a wife's rights under an order of separate maintenance which was based simply on the fact of desertion by the husband can be brought to an end by her refusal to accept an unconditional offer of reconciliation made in good faith by her husband, and her refusal thereafter to return to the husband is an abandonment which, when pursued for the requisite period of time, will constitute a just cause for divorce on the ground of desertion. Appleton v. Appleton, 97 Wash. 199, 166 P. 61; Slavinsky v. Slavinsky, 287 Mass. 28, 190 N.E. 826; Rylee v. Rylee, 142 Miss. 832, 108 So. 161; Malouf v. Malouf, 54 Wyo. 233, 90 P.2d 277. Annotation 25 A.L.R. 1047; 61 A.L.R. 1268.
Since there is no showing in the record before us that the law of Connecticut provides a statutory method for the modification of separate maintenance decrees, we think it must be presumed that the issue is governed by the latter rule stated above. And, since the record fails to reflect that prior to the husband's alleged first offer of reconciliation his desertion had continued for such a period of time as to give his wife an accrued cause of action for absolute divorce on the ground of desertion under the law of Connecticut, the state of her domicile, she is not within the rule that after the accrual of such a period the rights of the wife cannot be affected by a mere offer of reconciliation on the part of the erring spouse. Anders v. Anders, supra.
On the issue of the offer of reconciliation by the husband subsequent to the entry of the Connecticut decree, the specific finding of the special master, was as follows: "In his testimony the plaintiff stated that on many occasions since the trial he has made unqualified offers and requests to the defendant that she come back to live with him and that she has refused. There is no corroboration of this testimony * * * I find that the plaintiff has failed by a preponderance of evidence, to prove that he has attempted to effect a reconciliation or that he has asked the defendant to resume cohabitation since leaving her on September 28, 1946, and therefore that he has failed to prove that the defendant has been guilty of wilful, obstinate and continued desertion of the plaintiff * * *."
The chancellor overturned this finding and granted a divorce to the husband, because, as he stated in his order, he was of the opinion, from a study of the transcript of the evidence, "that the plaintiff's testimony, corroborated by that of the witness, James M. Kelly, shows that after the entry * * * [of the Connecticut decree], the plaintiff offered unqualifiedly and unconditionally on several occasions to resume the marital relationship and sought in good faith a reconciliation * * *."
It is maintained by the appellee that by virtue of prior decisions of this Court the chancellor had no authority to disregard the findings of the special master and to substitute his own opinions or conclusions as to the weight to be given the testimony adduced before the master. The appellee relies upon Harmon v. Harmon, Fla., 40 So.2d 209, and subsequent decisions, to support this position. See Florida National Bank & Trust Co. of Miami v. Brown, Fla., 47 So.2d 748; Hopping v. Lovejoy, Fla., 53 So.2d 704.
The holding in Harmon v. Harmon was that where a competent master is selected by the chancellor and attentively conducts the hearings, thoroughly digests the testimony of the witnesses, and arrives at conclusions which are logical and well supported, his findings should not be disregarded or overruled by the chancellor simply because of an opinion of the chancellor at variance with that of the master. The reason for this holding was that inasmuch as the master has the opportunity to see and hear the witnesses he is in much *272 better position to weigh the evidence and determine its credibility than is the chancellor who reviews the case only from a typewritten record.
The factors that moved the court to adopt the rule are not present in the instant litigation. For with the exception of the oral testimony given before the master by the plaintiff in the case, all of the testimony upon which the master arrived at his findings came from a typewritten record, namely, the depositions of the witnesses taken in the State of Connecticut. And as to the oral testimony given by the plaintiff, the special master refused to rely on it not necessarily because he did not believe it  although it was contradicted in every essential particular by the depositions of the defendant and her witnesses  but because he found that it was not corroborated by the testimony of other witnesses and hence did not present a valid basis for the entry of a decree in his favor. See Chisholm v. Chisholm, 98 Fla. 1196, 125 So. 694; Morgan v. Morgan, Fla., 40 So.2d 778. As to the requirement that testimony of a plaintiff in a divorce action must be corroborated, the chancellor, as is evident from his order, did not agree with the special master that the oral testimony of the plaintiff was uncorroborated, but found corroboration of his evidence in the testimony given by the plaintiff's witness, Kelly. Since this testimony was introduced in evidence only in deposition form the master was in no better position to judge of its weight and credibility than was the chancellor.
The record shows that the witness Kelly is an attorney in Connecticut who represented the plaintiff Martin "with reference to his marital situation," beginning with the month of July, 1948. The major part of the testimony appearing in his deposition related to conversations he had had with a Mr. Citron, the attorney for the wife, during certain unsuccessful attempts to arrange a conference between himself, his client, Mrs. Martin and her attorney, Citron, for the purpose of discussing the release of a caveat which Martin, during the pendency of the separate maintenance action in Connecticut, had placed against a residence property standing in the name of the wife.
As appears from his deposition the following testimony was given by Kelly, over the objection of the defendant:
"Q. And at that time did Dr. Martin discuss with you the possibility of arranging a conference with Mrs. Martin, Attorney Citron and yourself * * * with regard to a reconciliation? A. He did.
* * * * * *
"Q. At that time what did Dr. Martin say he was willing to do?
* * * * * *
A. Dr. Martin stated that he was not only willing but anxious to resume living with Mrs. Martin and that he was also willing to have Mrs. Martin's mother, Mrs. Evans, remain with them in the home. And he asked me if I would contact Mr. Citron and arrange a meeting of the four  that is, Mrs. Martin, Mr. Citron, Dr. Martin, and myself.
"Q. And did you subsequently discuss the matter of a conference with Mr. Citron  Mrs. Martin's attorney? A. I did.
"Q. And what was Mr. Citron's reply? A. Mr. Citron stated to me that Mrs. Martin was very disturbed over the matter of a caveat which Dr. Martin had caused to be placed on the * * * property standing in the name of Mrs. Martin * * * during the time they were having their difficulties and were, I believe, in court in the Superior Court at the time. Mr. Citron said that Mrs. Martin told him that before there would be any conferences to discuss reconciliation he, Dr. Martin, should, as a matter and show good faith, remove the caveat.
"Q. Did Dr. Martin tell you whether or not he had personally discussed this matter with Mrs. Martin? A. He told me that * * * in talking *273 with Mrs. Martin * * * [she] told him that he would have to wait at least six months  that it was a matter that she would have to give great thought to and serious consideration before she would give an answer as to whether or not they would resume their marital life.
"Q. * * * this conversation between Dr. Martin and Mrs. Martin took place after the caveat was released? A. That's correct. Because Mr. Citron, after the caveat was released, told me personally that there wasn't a chance of Mrs. Martin taking him back.
* * * * * *
"Q. After the conference you had with Dr. Martin, at which he made these statements, did you have a further discussion with Mrs. Martin's attorney, Mr. Citron, regarding an all-party conference? A. Yes * * * Mr. Citron said that Mrs. Martin was unwilling to sit down and discuss the matter at that time * * *.
"Q. Did you have further talks with Dr. Martin * * * concerning this matter? A. I did.
"Q. What did he tell you? A. He said that sometime in 1949  I can't say just when  he made a dinner date with Mrs. Martin and they went out to dinner together * * * [and] he asked Mrs. Martin, the six months period of time having expired * * * whether she would resume living with him, and she said that she would have to consider it a further period of six months to a year. And she did not care to discuss anything about reconciliation or living with him."
It is evident that the greater portion of this testimony was given in violation of the hearsay rule and is not entitled to consideration. Wigmore on Evidence, 3rd Ed., sec. 1361 et seq.; Vaughan's Seed Store v. Stringfellow, 56 Fla. 708, 48 So. 410. With such incompetent evidence excluded, the nearest the deposition comes to indicating any attitude on the part of Mrs. Martin either to resume, or not to resume, living with her husband is as to the release of the caveat on her property (of which more later) and the statement of the witness Kelly that he was told by Citron, the wife's attorney, "that there wasn't a chance of Mrs. Martin taking him [the plaintiff] back."
That such a statement was ever made to Kelly was flatly denied by Citron, who, in a deposition given by him in the instant case on behalf of Mrs. Martin testified under oath: "On the question of their getting together, I told them [the attorneys for Martin] I could not answer that question. I remember explicitly stating to them that these people were not children. And that it was a personal problem of theirs for them to personally decide. I remember this distinctly because this was my attitude at all times, even during the trial. Because when that question always came up, I insisted that this was a personal matter between Mr. and Mrs. Martin. And it was for them to decide  the problem of their living together."
But even had there been no contradiction of Kelly's testimony in this aspect of the case, it is difficult to understand how Citron's statement could have been considered binding upon Mrs. Martin without at least some showing in the record that Citron had authority to speak for her in this regard  and in the absence of such a showing it seems to us that Citron's statements constituted nothing more than a personal opinion or conclusion as to what Citron conceived Mrs. Martin's attitude to be, and hence not competent as evidence of her rejection of a reconciliation offer.
As to the release of the caveat, the evidence shows that when the parties were first married Martin and Mrs. Martin's mother, a Mrs. Evans, purchased a house which the parties thereafter occupied as a home until the separation. Martin and Mrs. Evans each contributed $7,000 to the purchase price of $14,000. Prior to the separation both purchasers quitclaimed their respective interests to Mrs. Martin. After the separation of the parties but before the *274 rendition of the separate maintenance decree, Martin asked Mrs. Martin to deed him back the property. When she refused he filed a caveat against the property. Why he did this is not satisfactorily explained in the record, because he makes no contention that the deed was procured through fraud or other overweening influence which would have been sufficient to justify such action. Therefore, we cannot say that Mrs. Martin acted unreasonably in demanding that Martin release the caveat on her property before she would give any consideration to the proposition that she attend a conference for the purpose of exploring the possibility of a reconciliation with her husband.
The rule is plain that the uncorroborated testimony of a plaintiff in a divorce action, without more, is not sufficient to support a valid decree of divorce. Morgan v. Morgan, supra; Dean v. Dean, 87 Fla. 242, 99 So. 816. What will amount to a sufficient corroboration of the cause of action must be determined by the circumstances of each case. 27 C.J.S., Divorce § 136(c)(2)(b). In the instant case the chancellor found sufficient corroboration of the plaintiff's testimony in the deposition given by Kelly. When the incompetent and immaterial aspects of Kelly's testimony are eliminated, we are unable to agree that this evidence meets the test required by the rule. See Bowersox v. Bowersox, 157 Md. 476, 146 A. 266, 65 A.L.R. 165, and annotation pages 169-186.
We hold, therefore, that the plaintiff has failed to support the allegations of his complaint and hence that his complaint should have been dismissed in accordance with the recommendations of the special master.
Accordingly, the decree appealed from should be reversed with directions that a decree be entered in conformance with this opinion.
It is so ordered.
ROBERTS, C.J., and TERRELL and MATHEWS, JJ., concur.