CHARLES CARROLL, Chief Judge.
The appellant, who was the defendant below, seeks reversal of a divorce decree, contending the evidence was inadequate and specifically that there was no sufficient corroboration of the plaintiff-husband’s testimony. The appellant’s contentions are meritorious, and we reverse the decree.
The parties were married on September 8, 1951. Two children were born of the marriage. Their ages at the time the suit was commenced were seven and eleven years.
In support of the charge of extreme cruelty upon which the plaintiff husband relied, the complaint alleged “that the defendant commenced the course of conduct and demeanor approximately three years ago, which became increasingly worse and unbearable as time went along; that the defendant became cold, indifferent and reserved, and showed no interest in the plaintiff’s welfare, happiness, activities or social life, and that because of her frigidity, withdrawing, lack of companionship and society, the marriage became intolerable and the plaintiff removed himself from the premises, owned jointly by the parties, in March 1965.”
The defendant wife contested the suit, and by answer denied the allegations in the complaint relating to the ground of extreme cruelty and averred that she had been a proper wife and had “never in any manner whatsoever given him any cause to be dissatisfied with her or in any way to be unhappy in his married life.” She further averred that the plaintiff for the past year “had been dating another female living in Dade County” and on a date which was approximtely eight months prior to the filing of the suit had informed her that “he had been seeing another girl and that he could not give her up,” and that thereupon the plaintiff had moved from the home of the parties.
*500 On trial of the cause the plaintiff testified on direct examination that his wife practiced birth control and was indifferent and frigid; that when he asked her a question she would not answer it unless she felt like it; that he liked to have dessert right after dinner but that his wife preferred to have coffee and a cigarette first; that following the separation his wife told him “because I had left I was crazy” and that their priest had said he was crazy and not responsible; that he had lost weight and had stomach trouble prior to the separation and that he had been in good health following the separation.
On cross-examination it was brought out that the plaintiff had had stomach trouble prior to and at the time of the marriage and throughout most of his adult life; and in response to questions put to him by the attorney for the defendant the plaintiff admitted he had engaged in adultery with a named woman, before and since the separation.
On redirect examination the plaintiff testified that he did not love his wife and did not feel that he could live with her again. When asked why he did not love her he testified it was a periodic thing which kept building up “until I just didn’t care any more.” To that statement the trial court responded by saying “That still doesn’t mean anything to me. I have to know what these things are.” The plaintiff then testified that his wife was averse to traveling by air, with the result that she was unable to accompany him on weekend trips and to conventions; that on their vacations each year the wife desired to go to her former home in Milwaukee; that he preferred to go elsewhere but that they always went to Milwaukee; that they made such trips by automobile and took along water and things to eat; that if he “bothered her too many times for water she would get mad” and that if she was smoking a cigarette when he requested a sandwich she would say, “when I finish my cigarette I will make you one;” that on automobile trips and in the home the wife would be silent and not talk to him for extended periods, but “when someone was around or company was around it was always perfect, peaches and cream.” On redirect examination the plaintiff testified the wife did “petty things” to annoy him. In explanation he said when he would ask her a question or comment on something she would answer if she felt like it, and if she didn’t she would remain silent.
In Prall v. Prall, 58 Fla. 496, 50 So. 867, 871, 26 L.R.A.,N.S., 577, the Supreme Court said:
“The extreme cruelty that- constitutes-the statutory ground for divorce is such conduct by the husband or wife towards the other consort as will endanger his or her life, limb or health, or as will cause a reasonable apprehension of bodily hurt. The injury or danger of injury may be mental or physical, but it must be of such a character as to render it impracticable for the complainant to discharge with reasonable safety his or her marital duties. Mere inconvenience, unhappiness, or incompatibility of temperament or disposition, rendering the marriage relation between the parties disagreeable or even burdensome, will not authorize a decree of divorce for extreme cruelty. * * * ”
In Chisholm v. Chisholm, 98 Fla. 1196, 125 So. 694, 702, the Supreme Court said:
“This court has held that what shall be deemed sufficient cause for divorce is always a matter of law, and it is the duty of the court to refuse a divorce unless satisfied of the sufficiency of the bill and the truth of the evidence to establish one of the grounds. Hancock v. Hancock, 55 Fla. 680, 45 So. 1020, 15 L.R.A.,N.S., 670.”
Further in the opinion in the Chisholm case, the Supreme Court, quoting from Trigo v. Trigo, 90 Fla. 60, 105 So. 123, said:
“The rule is well settled that divorce on the ground of extreme cruelty will be denied, when there is no actual bodily violence, unless the treatment complain *501 ed of be such as damages health or renders cohabitation intolerable and unsafe, or unless there are threats of mistreatment of such kind as to cause reasonable and abiding apprehension of bodily violence, so as to render it impracticable to discharge marital duties. * * * ”
The facts presented by the plaintiff in this case are not sufficient to establish the statutory ground of “extreme cruelty by defendant to complainant” authorizing a divorce.
We next consider the contention of the appellant that the evidence offered for corroboration was insufficient. Two corroboration witnesses were presented. John A. Mueller testified as follows:
“Q Did you ever see anything out of the order of a husband and wife relationship between the parties?
“A No, not to my knowledge, no.
Are you referring to anything like fights and arguments?
“Q Yes.
“A No. Once when I went to dinner there were harsh words, but it was not a heated argument, no.
“Q Now, you and Mrs. Clutter went out together one time here in Miami with her brother?
“A Yes; that is correct.
“Q And did Mrs. Clutter discuss her affairs with you at that time, with Mr. Clutter ?
“A Well, just as to the fact that they were separated and, also, the conversation included her brother at the time. He was invited. He was also having marital problems.
“Q Did Mr. Clutter ever discuss his marital relationship with you?
“A Only that he was unhappy.”
* * * * * *
“Q Now, what do you know about Mr. Clutter’s health in the last two or three years, that you have observed yourself?
“A Mr. Clutter’s health?
“Q Yes.
“A Well, I don’t think I can make an observation as far as his health. He always appeared to be healthy on the surface.”
* * * * * *
“Q You do know that Mr. Clutter was dissatisfied going to Milwaukee to visit relatives every summer?
“A Yes. He wanted to go other places.”
The second witness offered in corroboration, J. C. McClellan, testified as follows:
“Q During the past three years have you had occasion to notice any loss of weight of Mr. Clutter, or anything wrong with his physical being ?
“A Yes.
“Q How did you know that?
“A Well, last year I tried to get him to the health club _ with me. I had the same problem. I was under weight. We went to the health club. We tried to gain some weight, and he seemed to be overly nervous.
“Q Do you know how much he weighed at that time?
“A Yes. I remember it was pretty low.
“Q Was it lower than his normal weight, from your observation?
“A Well, he looked awful thin. He has always been thin.”

“Q Do you know personally how they have been getting along together in the last two or-three years?
*502 “A When you say personally, Mr. Charles, I don’t know what you mean. I don’t know anything intimate about Bennie or her that is their personal business. Do you mean what has been said to me?
“Q No. You can’t testify as to what somebody has told you.
“A I know he seemed to have been unhappy. Unfortunately that is the truth.
“Q When did you first observe this unhappiness ?
“A A couple of years ago. He used to go to the beach with me and my children very frequently, and at the time I thought it was just man talk. When men get together sometimes they just talk.
“Q And he expressed to you at that time his unhappiness with his married life?
“A Yes.”
What will amount to a sufficient corroboration of the testimony of a plaintiff in a divorce suit must be determined by the circumstances of each case. Martin v. Martin, Fla.1953, 66 So.2d 268; Martin v. Martin, Fla.App.1958, 102 So.2d 837; Dworkis v. Dworkis, Fla.App.1959, 111 So.2d 70, 72 A.L.R.2d 1189.
In Martin v. Martin, supra, Fla.App.1958, 102 So.2d 837, 839, the second district court of appeal, speaking through the late Chief Judge Kanner, said:
“It has been firmly entrenched in the Florida jurisdiction that the uncorroborated testimony of a plaintiff in a divorce action, without more, is not sufficient to support a valid decree of divorce. Dean v. Dean, 1924, 87 Fla. 242, 99 So. 816; Morgan v. Morgan, Fla.1949, 40 So.2d 778; Martin v. Martin, Fla.1953, 66 So.2d 268; Garland v. Garland, 1947, 158 Fla. 643, 29 So.2d 693, and Holmes v. Holmes, Fla.1957, 95 So.2d 593. What will amount to a sufficient corroboration of the cause of action must be determined by the circumstances of each case. Martin v. Martin, Fla.1953, 66 So.2d 268. However, it is not required to corroborate every detail of the testimony of the party seeking the divorce; corroboration is sufficient if it is consistent with the testimony of the party seeking the divorce and tends to satisfy the impartial and reasonable mind that such testimony is true. Chisholm v. Chisholm, 1929, 98 Fla. 1196, 125 So. 694. * * * ”
In our view the testimony presented as corroboration in this case was patently insufficient to fulfill the requirements of the law in that respect.
Accordingly, for the reasons stated the decree appealed from is hereby reversed.
Reversed.